Opinion issued June 28, 2007













In The

Court of Appeals

For The

First District of Texas






NO. 01-03-01050-CV






ROBERT S. PICKELNER AND IAN HURWITZ, Appellants


V.


DAVID ADLER, INDEPENDENT EXECUTOR OF THE ESTATE OF
SHIRLEY ALPHA, DECEASED; SUZANNE ALPHA JOHNSTON;
CALVIN "KEN" ALPHA JR.; GRANVILLE ALPHA JR.; ROLAND
ALPHA; SHARON ALPHA MARINO; CAROL MARIE BAILEY SMITH;
MARY ELIZABETH BAILEY, AS INDEPENDENT EXECUTRIX FOR
THE ESTATE OF JOHN BUCK BAILEY, DECEASED; ROBERT F.
BAILEY JR.; CHARLES LYLE BAILEY; MARION LOUISE BAILEY;
NADYNE ELIZABETH BAKER; PHILIP A. MASQUELETTE,
ATTORNEY AD LITEM FOR THE UNKNOWN HEIRS OF THE ESTATE
OF SHIRLEY ALPHA, DECEASED; LYNN ALPHA SMITH; CAROL
DIANE DURBIN; DOLORES ANN LICCIONI FORSYTH; CHARLOTTE
LICCIONI HAWTHORNE; RIDGEWAY WATSON LICCIONI JR.;
MARTHA JEAN LICCIONI RAINEY; CHARLES EDWARD LICCIONI;
OTIS LEE DURBIN; WILLIAM ROBERT DURBIN; and MILES
PITTELKOW JR., Appellees






On Appeal from Probate Court No. 4

Harris County, Texas

Trial Court Cause No. 304,893-401





O P I N I O N


 Appellants, Robert S. Pickelner and Ian Hurwitz, appeal separately from a final
judgment rendered in a probate matter. We determine (1) whether the trial court erred
by denying Pickelner's motion for new trial for the mistaken reason that the motion
had been belatedly filed; (2) whether Hurwitz preserved his complaint that the trial
court erred by not rendering judgment in accordance with a partial settlement
agreement and whether the court erred in denying his post-judgment motion asking
to enforce that agreement; and (3) whether the trial court erred by implicitly rejecting
Hurwitz's request to establish a constructive trust in his favor to convey a house of
the decedent to him. We affirm.

Background


 Shirley Alpha ("Shirley") executed a will in May 1997. Her long-time friend
and attorney, Pickelner, drafted the will. The will made Pickelner the sole devisee:

 I give, devise and bequeath all the rest and remainder of my property of
which I may die seized or possessed, or to which I may be in anywise
entitled, whether real, personal or mixed, wherever situated and however
acquired, to my long-time friend ROBERT S. PICKELNER, to be
distributed in accordance with the specific instructions I have provided
him.


The instructions to which the above-quoted provision refers were verbal, and Shirley
did not reduce them to writing. The trial court received testimony of what Shirley's
verbal instructions to Pickelner were. From that testimony, it is evident that Shirley's
instructions to Pickelner did not cover all of the property that she bequeathed to him. 
Among her verbal instructions, Shirley required that Pickelner receive one of her
homes and that Hurwitz, Shirley's close friend and portfolio manager, receive the
other. Neither Pickelner nor Hurwitz was related to Shirley, and neither is her heir
at law.

 Shirley died in January 1999. She had no children and was unmarried at the
time. Appellee David Adler is the independent executor of Shirley's will; the other
appellees are Shirley's heirs at law or their representatives. In March 2001, Adler
filed this declaratory-judgment action, seeking, among other things, an interpretation
of the above-quoted devise. Hurwitz intervened. 

 Some time before trial, Hurwitz, Pickelner, and certain of the appellee heirs
settled and entered into a mediated settlement agreement to divide Shirley's property. 
That agreement was filed with the trial court before trial. However, not all parties
signed the agreement, and neither Hurwitz nor Pickelner expressly requested during
trial that the trial court enforce it.

 In April 2003, after a bench trial, the trial court rendered declaratory judgment
that, for reasons that we set out further below, the bequest to Pickelner was void and
that Shirley's heirs at law were to receive her property. Although the trial court
indicated that it had considered the parol evidence concerning Shirley's distribution
instructions to Pickelner, the court concluded that it could not give effect to those
instructions. Pickelner and Hurwitz jointly moved for new trial and, alternatively, to
enforce the settlement agreement between them and some of the heirs. The trial court
denied their motion by written order. 

 Pickelner and Hurwitz appealed. After their appeals were perfected, and upon
determining that the judgment was not final because it lacked a declaration of
heirship for which Hurwitz had pleaded, this Court abated the appeal and remanded
the cause for the trial court to render a final judgment. The trial court has since
rendered a final judgment, and the appeal has been reinstated.

Pickelner's Appeal (1)


 In his issues two and three, Pickelner argues that the trial court erred by
denying his motion for new trial, which included a motion for enforcement of the
settlement agreement, on the sole ground that the trial court did not reach the
motion's merits because it had mistakenly concluded that the motion was filed too
late. Pickelner relies on a recitation in the order that "The Motion for New Trial,
Alternatively for Modification of Judgment (In Part) and Request for Hearing on
Merits was filed on August 18, 2003 and was to [sic] late to be a proper motion for
new trial, but [was] considered by the court to be a response." (Italics in original.) 
Pickelner correctly points out both that his and Hurwitz's joint new trial motion was
filed on August 14, 2003--not August 18--and that August 14 was within the time
period for filing a new trial motion. 

 Pickelner misreads the order. The quoted recitation referred not to his and
Hurwitz's joint new trial motion, but to the joint new trial motion of appellees
Suzanne Alpha Johnston, Calvin "Ken" Alpha Jr., and Miles Pittelkow Jr., which was
filed August 18. The motion for new trial filed by these three appellees was entitled
"Motion for New Trial, Alternatively for Modification of Judgment (In Part) and
Request for Hearing on Merits." This was not the style of Pickelner and Hurwitz's
new trial motion: Pickelner and Hurwitz's motion was styled, "Motion for New Trial
and in the Alternative, Motion to Modify Judgment to Enforce Settlement
Agreement." In its complained-of order, the trial court recognized the timely filing
of Pickelner and Hurwitz's new trial motion by reciting, "On this day came on to be
considered the Motion for New Trial and in the Alternative, Motion to Modify
Judgment to Enforce Settlement Agreement filed August 14, 2007. . . . After carefully
considering the motion and all responses, it is the opinion of the Court that the motion
for new trial should be denied." (Italics in original; emphasis by underlining added.) 
 These recitations demonstrate that the trial court did not summarily deny Pickelner
and Hurwitz's motion for new trial and enforcement of the settlement agreement
based on a mistaken belief that the motion was late.

 We overrule Pickelner's issues two and three. (2)


Hurwitz's Appeal: Failure to Enforce the Settlement Agreement


 In his issue two, Hurwitz argues that the trial court "erred in refusing to reach
and decide enforceability of the [settlement] agreement." Although his brief is not
entirely clear, Hurwitz appears to argue both that the trial court erred (1) by having
denied his motion for new trial, which asserted that the court had erred by not having
rendered judgment in accordance with the partial settlement agreement, and (2) by
denying his post-judgment motion to enforce that agreement.

 The settlement agreement was entered into after a court-ordered mediation, but
it was not signed by all parties in the trial court--in particular, as noted by Hurwitz's
counsel during the hearing to determine his standing, it was not signed by all of
Shirley's heirs at law. It was filed in the trial court styled as a "Rule 11 Agreement" (3)
before trial began. Under the settlement agreement, appellees Suzanne Alpha
Johnston, Calvin "Ken" Alpha Jr., and another were to receive certain real property
of Shirley's, $90,000, certain of Shirley's household goods, and her Lexus
automobile. In exchange, Hurwitz and Pickelner were to receive one of Shirley's
homes each. The remaining property of Shirley's was to be distributed "to the
intestate heirs of Shirley, deceased, as provided by law."

 Hurwitz and Pickelner did not request that the trial court enforce the settlement
agreement during trial, but did so for the first time in their post-trial motion for new
trial and for enforcement of the settlement agreement. In that motion, Hurwitz and
Pickelner advised the trial court that some of the settlement agreement's signatories
had indicated, the month before judgment was rendered, that they would not abide by
the agreement. Hurwitz and Pickelner sought (1) a new trial based on the settlement
agreement "to hear and rule on the newly discovered evidence" that some of the
signatories had repudiated the agreement or (2) for the court to modify the final
judgment to enforce the settlement agreement. A letter signed by the court's staff
attorney, issued on the same day as the order denying Hurwitz and Pickelner's post-trial motion, stated,

 [T]here were references to the enforceability of the settlement
agreement(s) entered into by various parties. There are no pleadings
establishing a justiciable controversy over the settlement agreement(s)
and there has been no notice or opportunity for the merits of such a
controversy to be argued before the Court. The pleading asking for
relief, in fact, implies that the purported repudiation of the agreement
has arisen since Judge McCulloch's judgment on the Declaratory
Judgment, and could not therefore have been part of the trial and
resulting judgment. If a proper pleading is filed, if notice is given, if
this Court has jurisdiction over the controversy and after hearing the
merits, only then can Judge McCulloch rule on the issues surrounding
the agreements. At this time and by his ruling on the Declaratory
Judgment, Judge McCulloch expresses no opinion about the status of the
parties to the settlement agreement(s), nor the enforceability thereof.


 We first consider whether the trial court erred by denying the motion for new
trial, which sought a new trial based on the fact that the settlement agreement's
signatories refused to perform under the agreement a month before the judgment's
entry. We begin by noting that it is not error for a trial court not to enforce a
settlement agreement in its judgment when the agreement's enforcement was not
requested before judgment. Nonetheless, Hurwitz argues that the settlement
agreement's enforceability was tried by consent before judgment was entered, so that
the trial court erred in not incorporating its terms into the judgment.

 We disagree. "When issues not raised by the pleadings are tried by express or
implied consent of the parties, they shall be treated in all respects as if they had been
raised in the pleadings." Tex. R. Civ. P. 67. "Trial by consent is intended to cover
the exceptional case where it clearly appears from the record as a whole that the
parties tried the unpled issue." RE/MAX of Tex., Inc. v. Katar Corp., 961 S.W.2d 324,
328 (Tex. App.--Houston [1st Dist.] 1997, no pet.). Trial by consent "is not intended
to establish a general rule of practice and should be applied with care, and in no event
in a doubtful situation." Id. "To determine whether the issue was tried by consent,
the Court must examine the record not for evidence of the issue, but rather for
evidence of trial of the issue." Id. Neither Hurwitz nor Pickelner amended their
pleadings at any time to request enforcement of the settlement agreement. Hurwitz
filed the settlement agreement before judgment, and it was admitted into evidence and
discussed repeatedly during trial. But the settlement agreement was discussed in
order to give a context to determine Hurwitz's standing to intervene; to show what
Shirley's verbal distribution instructions to Pickelner were, to support the formation
of a constructive trust; and to show how Pickelner had exercised dominion and
control over Shirley's assets, to show that Pickelner, the will's drafter, had not
disclaimed any distributions made to him. Neither Hurwitz nor Pickelner requested
that the settlement agreement be enforced before judgment was rendered, despite (as
their motion for new trial asserted) their having known approximately a month before
judgment that some of the settling parties would not abide by the agreement. In fact,
Hurwitz's own counsel represented to the trial court during the hearing on Hurwitz's
standing that "the Rule 11 agreement will not become effective until it is signed off
by all of the potential heirs of the estate of Shirley or until it is approved by this
Court." A court does not err in failing to incorporate into its judgment relief that was
not tried by consent and that was not otherwise presented or tried to the court before
judgment.

 We overrule this argument under Hurwitz's issue two.

 We next consider whether the trial court erred by denying Hurwitz's post-judgment motion to enforce the partial settlement agreement. "An action to enforce
a settlement agreement, where consent is withdrawn, must be based on proper
pleading and proof." Padilla v. LaFrance, 907 S.W.2d 454, 462 (Tex. 1995). There
were no pleadings to support Hurwitz's post-trial motion to enforce the settlement
agreement, and the matter had not been tried by consent. Moreover, although the
settlement agreement purported to have been executed "under the family settlement
doctrine," not all of Shirley's heirs signed it, and the agreement divided estate assets
to which the court determined that the non-signatory heirs also had a claim. "A
family settlement agreement is an alternative method of administration in Texas that
is a favorite of the law." Shepherd v. Ledford, 962 S.W.2d 28, 32 (Tex. 1998). Under
such an agreement, "[t]he beneficiaries of an estate are free to arrange among
themselves for the distribution of the estate and for the payment of expenses from that
estate." Id. However, such an agreement generally requires all heirs' or
beneficiaries' agreement on the distribution. See Estate of Morris, 577 S.W.2d 748,
755-56 (Tex. Civ. App.--Amarillo 1979, writ ref'd n.r.e.) ("And it remains our law
that a family settlement in which all of the heirs and beneficiaries agree that a
purported will shall not be probated is valid and enforceable.") (emphasis added)
(citing Salmon v. Salmon, 395 S.W.2d 29, 32 (Tex. 1965)). The trial court did not
err in denying a request to enforce a settlement agreement that distributed estate
assets contrary to the rights of those who had not signed the agreement, especially
when no pleading supported that request and the matter had not been tried by consent.

 We overrule the remainder of Hurwitz's issue two.


Hurwitz's Appeal: Implicit Rejection of Request


to Recognize a Constructive Trust



 In his first issue, Hurwitz argues that the trial court "erred in failing to
recognize a constructive trust over the property [Shirley] intended Hurwitz to
receive." Specifically, Hurwitz contends that the will's distribution to Pickelner, with
direction to distribute Shirley's property pursuant to verbal instructions that she had
left him, required imposition of a constructive trust for Hurwitz's benefit.

A. Standard of Review

 We review declaratory judgments under the same standards as other judgments
and decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997). The
declaratory judgment under review was rendered after a bench trial, but no fact
findings were requested or entered. Accordingly, the conclusions in the trial court's
declaratory judgment, being themselves conclusions of law, will be upheld on appeal
if they can be sustained on any legal theory supported by the evidence. See, e.g.,
Truck Ins. Exch. v. Musick, 902 S.W.2d 68, 69 (Tex. App.--Fort Worth 1995, writ
denied). We review a trial court's legal conclusions de novo. See BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 

B. Additional Facts

 Pickelner, a long-time friend of Shirley's, drafted her will. The pertinent
portion of the will, as quoted above, provided that all of Shirley's property was
"devise[d] and bequeath[ed]" to Pickelner "to be distributed in accordance with the
specific instructions which I have provided him." The undisputed testimony was that
Shirley had given Pickelner verbal instructions that one of her homes was to be
distributed to him, that another of her homes was to be distributed to Hurwitz, and
that certain other property would be distributed to others; however, it was also
undisputed that the verbal instructions that she gave Pickelner did not concern all of
her property that passed to him under the will. It was further undisputed that Shirley
did not give Pickelner the distribution instructions in writing.

 After Shirley died, an undated note in her handwriting was found in her home. 
 It was written on the back of an envelope that was post-marked within a few months
before her death. That note, entitled, "Attn: Important Addendum Will," indicated
how certain property should be distributed, including that one of her homes was to
go to Hurwitz. Pickelner testified that the handwritten note "parroted the
[distribution] instructions she had given me verbally on many occasions." As on
appeal, Hurwitz never contended at trial that the handwritten note was a valid codicil
to the will, but he instead argued that the writing was consistent with Shirley's verbal
instructions to Pickelner and showed her intent concerning those distributions.

 The trial court's final declaratory judgment provided in pertinent part as
follows:

 [T]he Court finds that Shirley's will fails to make a proper
testamentary disposition of her estate and that the entire estate passes by
intestate succession to her heirs at law. In reaching this finding, the
Court considered the testimony that Miss Alpha orally instructed her
friend and counselor, Mr. Robert Pickelner, in how she wanted her
estate distributed. The Court recognizes that there is a writing . . . ,
purportedly in Miss Alpha's handwriting, that mentions certain property. 
The Court finds that this writing was not in existence at the time the will
was written and cannot have been incorporated by reference into the will
and is of no testamentary significance. The Court finds that under Texas
law, courts may not construe a will and determine its dispository scheme
by oral instructions that the testator may have given. The Court finds
that the will was written by an attorney at law licensed to practice in the
state of Texas and that the will must be read giving ordinary meaning to
the words in the will and that there is no mention of a trust in the will or
attempt by the testator to create a testamentary trust in the will and that
there is no trust.


 In addition, the Court finds that the gift to Mr. Pickelner must fail
because it is a violation of Texas public policy for an attorney to draft
a will where he is the sole beneficiary. Mr. Pickelner therefore holds the
property, if at all, for the benefit of the heirs at law of Miss Alpha. . . .


 The court finds that the hand-written instructions are not valid,
that Mr. Pickelner does not take under the will and that the independent
executor shall distribute the estate after the payment of final debts and
expenses to the heirs at law.


C. Types of Trusts Generally

 Generally speaking, Texas law recognizes three types of trusts:

 "From the viewpoint of the creative force bringing them into existence,
trusts may be classed as 'express trusts' and 'trusts by operation of law,'
the latter being either resulting or constructive trusts. An express trust
can come into existence only by the execution of an intention to create
it by the one having legal and equitable dominion over the property
made subject to it. A trust by operation of law, frequently called an
'implied trust,' comes into existence either through an implication of
intention to create a trust as a matter of law or through the imposition of
the trust irrespective of, and even contrary to any, such intention. In
other words, a trust intentional in fact is an express trust; one
intentional in law is a resulting trust; and one imposed irrespective of
intention is a constructive trust."


Mills v. Gray, 147 Tex. 33, 37, 210 S.W.2d 985, 987 (1948) (quoting 54 Am. Jur. 22,
§ 5) (emphasis added).

 1. Express Trusts Generally

 An express trust establishes "a fiduciary relationship with respect to property
which arises as a manifestation by the settlor of an intention to create the relationship
and which subjects the person holding title to the property to equitable duties to deal
with the property for the benefit of another person." Tex. Prop. Code Ann. §
111.004(4) (Vernon 2007). "Technical words of expression . . . are not essential for
the creation of a trust." Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v.
Interfirst Bank of San Antonio, N.A., 748 S.W.2d 218, 220 (Tex. 1988); see
Barrientos v. Nava, 94 S.W.3d 270, 280 (Tex. App.--Houston [14th Dist.] 2002, no
pet.) ("No particular form of words is required to create a trust."). However, "[i]n
order to show an express trust, the controlling tests are that (1) the words of the settlor
ought to be construed as imperative and thus imposing an obligation on the trustee,
(2) the subject to which the obligation relates must be certain, and (3) the person
intended to be the beneficiary must be certain." Brelsford v. Scheltz, 564 S.W.2d 404,
406 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.); accord Roberts v.
Squyres, 4 S.W.3d 485, 489 (Tex. App.--Beaumont 1999, pet. denied). Stated
another way, "To create a trust by a written instrument, the beneficiary, the res, and
the trust purpose must be identified." Perfect Union Lodge No. 10, A.F. & A.M., of
San Antonio, 748 S.W.2d at 220. This Court has referred to these requirements as
"essential elements" of an express trust. See Fred Rizk Constr. Co. v. Cousins Mortg.
& Equity Investments, 627 S.W.2d 753, 757 (Tex. App.--Houston [1st Dist.] 1981,
writ ref'd n.r.e.); Ray v. Fowler, 144 S.W.2d 665, 668 (Tex. Civ. App.--El Paso
1940, writ dism'd judgm't cor.).

 "The missing terms of an express trust may not be established by parol
evidence." Brelsford, 564 S.W.2d at 406. That is, when an essential term is
altogether missing from an attempted express trust, or is not at least reasonably
certain, that term cannot be supplied by parol evidence, and the trust will fail. See id.
(indicating that attempted express trust that was missing basic elements of trustee's
powers and trust's terms failed); Ronald R. Cresswell, Patrick J. Pacheco,
Sarah Patel Pacheco, & Marjorie J. Stephen, Texas Practice guide: Wills,
trusts and est. plan. § 5:121 (Dec. 2000) ("[T]he language must be reasonably
certain as to the material terms of the trust. . . . If the language is so vague, general,
or equivocal that any of these necessary elements of the trust is left in real
uncertainty, the trust will fail.") (citing Fred Rizk Constr. Co., 627 S.W.2d at 757);
see also Ray, 144 S.W.2d at 669 (holding that attempted express trust that lacked
essential requirement of listing beneficiaries failed; stating, "The trust attempted to
be created is void for uncertainty."). 

 2. Resulting Trusts Generally

 A resulting trust is an equitable remedy that is implied by operation of law and
that a trial court may impose to prevent unjust enrichment. See, e.g., Hubbard v.
Shankle, 138 S.W.3d 474, 486 (Tex. App.--Fort Worth 2004, pet. denied). "When
an express trust fails, the law implies a resulting trust with the beneficial title vested
in the trustor or, in the case of the trustor's death, in her estate and devisees." 
Brelsford, 564 S.W.2d at 406; see Nolana Dev. Ass'n v. Corsi, 682 S.W.2d 246, 250
(Tex. 1984) ("A resulting trust is implied in law . . . when an express trust fails."). 
"The doctrine of resulting trust is invoked to prevent unjust enrichment, and equitable
title will rest with the party furnishing the . . . trust property when an express trust
fails." Corsi, 682 S.W.2d at 250.

 3. Constructive Trusts Generally

 Like a resulting trust, a constructive trust is also an equitable remedy that is
implied by operation of law and that a trial court may impose to prevent unjust
enrichment. See, e.g., Hubbard, 138 S.W.3d at 485. "'[A] constructive trust
generally involves primarily a presence of fraud, in view of which equitable title or
interest should be recognized in some person other than the taker or holder of the
legal title.'" Mills, 147 Tex. at 38, 210 S.W.2d at 988 (quoting 54 Am. Jur. 147,
§ 188); see Pope v. Garrett, 147 Tex. 18, 21, 211 S.W.2d 559, 560 (1948) ("The case
is a typical one for the intervention of equity to prevent a wrongdoer, who by his
fraudulent or otherwise wrongful act has acquired title to property, from retaining and
enjoying the beneficial interest therein, by impressing a constructive trust on the
property in favor of the one who is truly and equitably entitled to the same.")
(emphasis added). Because "[a] constructive trust escapes the unquestioned general
rule that land titles must not rest in parol, . . . there must be strict proof of a prior
confidential relationship and unfair conduct or unjust enrichment on the part of the
wrongdoer." Rankin v. Naftalis, 557 S.W.2d 940, 944 (Tex. 1977). Additionally, the
remedy of imposing a constructive trust "must be used with caution, especially where
. . . proof of the wrongful act rests in parol, in order that it may not defeat the
purposes of the statute of wills, the statute of descent and distribution, or the statute
of frauds." Pope, 147 Tex. at 25, 211 S.W.2d at 562.

D. Certain Trusts in the Context of Testamentary Conveyances

 A discussion of the relevant functions and operations of certain types of trust
in the context of testamentary conveyances follows.

 1. Secret Trusts and Constructive Trusts

 In the context of a testamentary conveyance, a constructive trust can be
imposed as a remedy when a testator conveys her property to another with the
understanding that the devisee will deliver the property to a third person, but the will
conveys the property outright to the devisee, without evidencing any intent to create
a trust. See Gerry Beyer, 10 Texas Practice Series § 45.1 (3rd ed.). The
agreement between the testator and devisee in this scenario is sometimes referred to
as a "secret trust" because it does not appear in the will. See Temple v. City of
Coleman, 245 S.W. 264, 267-68 (Tex. Civ. App.--Austin 1922, writ dism'd) ("'[I]f
the testator is induced either to make a will or not to change one after it is made, by
a promise, express or implied, on the part of a legatee that he will devote his legacy
to a certain lawful purpose, a secret trust is created, and equity will compel him to
apply property thus obtained in accordance with his promise.'") (emphasis added)
(quoting Trustees of Amherst College v. Ritch, 151 N.Y. 323, 45 N.E. 876, 37 L.R.A.
305 (1897)). In this situation, the remedy of a constructive trust may be imposed in
favor of the intended third person if the devisee wrongfully refuses to convey the
property to him or her; that is, a constructive trust may be employed to enforce the
secret trust. See Pope, 147 Tex. at 21-22, 211 S.W.2d at 560. The constructive trust
is imposed as a remedy not because the devise fails (the devise, in fact, succeeds), but
because equity will not allow the wrongdoing devisee to enjoy the beneficial interest
of the devise, i.e., it will not allow him to be unjustly enriched in contravention of the
secret trust. (4) See Pope, 147 Tex. at 21, 211 S.W.2d at 560. 

 Concerning secret trusts, the Texas Supreme Court has explained:

 It is very generally held that, as against a devisee or legatee who has
proved a desire or bequest to himself, absolute in terms, on promise
orally made to a testator to hold for the benefit of, or that he will convey
it to, another, the intended beneficiary, as against them, may establish
and enforce the trust with which the law affects him; but this is based on
his breach of confidence or fraud which in many cases gives rise to
trusts; and on like grounds in other cases beneficiaries have been
permitted to establish by oral testimony, and to enforce against devisees,
trusts growing out of testamentary disposition of property, but in those
cases it will be found most generally that the will was sufficient to divest
the heir of right. The theory on which those cases stand is thus clearly
stated: "Where a trust not declared in the will is established by a court
of chancery against the devisee, it is by reason of the obligation resting
upon the conscience of the devisee, and not as a valid testamentary
disposition by the deceased. . . . Where the bequest is outright upon its
face, the setting up of a trust, while it diminishes the right of the devisee,
does not impair any right of the heirs or next of kin, in any aspect of the
case; for, if the trust were not set up, the whole property would go to the
devisee by force of the devise. If the trust set up is a lawful one, it inures
to the benefit of the cestui que trust . . . . Olliffe v. Welis.


Heidenheimer v. Bauman, 84 Tex. 174, 183, 19 S.W. 382, 385 (1892) (emphasis
added). 

 2. Semi-Secret Trusts and Resulting Trusts

 The remedy of a resulting trust can be employed if the will on its face shows
that the testator intended to give her property to the devisee to hold in trust, but the
intended testamentary trust fails for lack of specificity. See Ray, 144 S.W.2d at
668-69. The devise attempting (but failing) to leave property in trust is sometimes
referred to as a "semi-secret trust" because the intent to make a trust appears in the
will, but the trust's essential terms do not. See Restatement (Third) of Trusts
§ 18 (2003), cmt. a. A semi-secret trust is, in essence, a failed express testamentary
trust. As when any express testamentary trust fails, the remedy of a resulting trust
arises by operation of law in favor of the testator's heirs, even if parol evidence would
have shown that the heirs were not the intended beneficiaries of the failed trust. See
Heidenheimer, 84 Tex. at 182-83, 19 S.W. at 384 ("'The will upon its face showing
that the devisee takes the legal title only, and not the beneficial interest, and the trust
not being sufficiently defined by the will to take effect, the equitable intent goes, by
way of resulting trust, to the heirs or next of kin as property of the deceased, not
disposed of by his will.'") (quoting Olliffe v. Wells, 130 Mass. 221, 225-26 (1881));
Ray, 144 S.W.2d at 669 ("We hold that, under the will in question, the defendant
[devisee] did not take the legal and beneficial title to the property. The legal title only
was vested in him. The trust attempted to be created is void for uncertainty. This
being true, the beneficial title to the estate vested in the heirs. If this holding be
correct as to the beneficial title to the property, the testatrix died intestate. In legal
effect it is tantamount to a provision by the testatrix that after the debts are paid her
estate should go to her legal heirs."); see also Loery v. Gallagher, 190 S.W.2d 165,
168 (Tex. Civ. App. 1945, writ ref'd w.o.m.); Kramer v. Sommers, 93 S.W.2d 460,
466 (Tex. Civ. App.--Fort Worth 1936, writ dism'd). The remedy of the resulting
trust arises not because of any wrongdoing on the part of the devisee, but because the
intended express trust (i.e., the semi-secret trust) fails, and the will evidenced an
intent that the devisee was to receive legal title only, not beneficial title. See,
generally, Heidenheimer, 84 Tex. at 181-85, 19 S.W. at 384-85.

 Concerning semi-secret trusts, the Texas Supreme Court has explained:

 "[I]f the trust set up is unlawful, the heirs or next of kin take by way of
resulting trust." Olliffe v. Welis. The rule is thus declared: " . . . But
where the will gives a legacy or devise to any one upon trust without
declaring such trust, and none is afterwards declared, or, if so, only in
an informal mode, the legatee or devisee will not hold absolutely under
the bequest, but he will hold in trust for the testator's heir at law or next
of kin, the bequest virtually lapsing by reason of being left incomplete. 
. . . and when the law requires a will of personalty to be executed with
the same formalities as a will of real estate, or with any other formalities,
it will require testamentary trusts in regard to such property to be
established by the same formalities. Any other rule in regard to
testamentary trusts would be liable, and very likely, in practice to trench
gradually upon the prescribed formalities in the execution of wills; for
if trusts of a testamentary character might be declared by the testator by
mere oral declarations, or by writing not executed with the same
formalities required in the execution of wills, men's final dispositions
would, in many cases, be made up largely of such acts and declarations
as the cupidity of claimants and the recklessness or indifference of
witnesses might dictate." 3 Redf. Wills, 579. . . . "If a testator should
devise real or personal property to A. in trust, and state no trust on
which A. is to hold, no paper not referred to in the will, and not duly
executed, could be received in evidence to prove the trusts, nor could A.
hold the beneficial interest because he is stamped with the character of
a trustee, but he would hold only the legal title, while the beneficial
interest would descend or result to the testator's heirs at law." 1
Perry, Trusts, 93.


Heidenheimer, 84 Tex. at 183-84, 19 S.W. at 385 (emphasis added).

E. Devises to the Attorney Who Drafts the Will

 Under the law applicable to this case, (5) if a lawyer prepares a will for a client
unrelated to him, devising to himself or one in his close family a substantial gift from
that client, that devise is void as against public policy. See Shields v. Tex. Scottish
Rite Hosp. for Crippled Children, 11 S.W.3d 457, 459-60 (Tex. App.--Eastland
2000, pet. denied); see also Olson v. Estate of Watson, 52 S.W.3d 865, 870 (Tex.
App.--El Paso 2001, no pet.). This prohibition is based on Texas Disciplinary Rule
of Professional Conduct 1.08(b). (6) See Olson, 52 S.W.3d at 870; Shields, 11 S.W.3d
at 459. "In determining whether the gift [is] substantial, we look to the commentary
following Rule 1.08(b)." Olson, 52 S.W.3d at 870. "Comment number three [of Rule
1.08] states that a lawyer may accept a gift from a client if the transaction meets
general standards of fairness, such as a gift given at a holiday or as a token of
appreciation." Id. If a devise to the attorney who drafted the will is void as a
substantial gift, then either the devisee of the will's residuary clause, or the testator's
heirs if there is no residuary clause, take under the will. See id. at 869 (determining
that trial court did not err by rendering summary judgment for testator's son, who was
expressly excluded from will in favor of drafting attorney, and by awarding son estate
because devise to attorney was void); Shields, 11 S.W.3d at 460 (determining that
devise to drafting attorney that was void went to residuary devisee under will).

F. Discussion

 Hurwitz in effect argues, as he did below, that a constructive trust should have
been recognized over the house that Shirley intended for him to receive because (1)
the will contained a semi-secret trust, i.e., the will demonstrated that she intended to
devise Pickelner certain property in trust for others; (2) the semi-secret trust
necessarily failed as an express trust; (3) parol evidence undisputably showed that
Hurwitz was one of the trust beneficiaries and that he was to receive the house; and
thus (4) the trial court should have imposed the remedy of a constructive trust on
Pickelner to carry out Shirley's undisputed wishes. In contrast, the trial court
concluded that (1) Shirley did not attempt to create an express trust in the will, i.e.,
the will did not contain a semi-secret trust; (2) parol evidence of her testamentary
intent could not be considered in determining her will's dispository scheme; (3) she
thus bequeathed her entire estate without qualification to Pickelner, the attorney who
drafted her will; (4) the devise to Pickelner failed because it violated public policy;
and thus (5) her heirs were the proper recipients of her estate. We disagree with
Hurwitz's arguments because they are contrary to well-established law. And although
we diverge from certain of the trial court's conclusions in the ways that we note
below, we agree with its ultimate disposition.

 "The basic principle in construing a will is to ascertain the intent of the
testator." Hancock v. Krause, 757 S.W.2d 117, 119 (Tex. App.--Houston [1st Dist.]
1988, no writ); see Tex. Prop. Code Ann. § 112.002 (Vernon 2007) ("A trust is
created only if the settlor manifests an intention to create a trust."). "If the language
of the will is unambiguous and plainly expresses that intention, it is unnecessary for
the court to apply the technical rules of construction; rather, the court is confined to
a mere legal interpretation and enforcement of the testator's intention." Id. That is,
"[c]onstruction of a trust instrument is a question of law for the trial court when no
ambiguity exists." Wright v. Greenberg, 2 S.W.3d 666, 671 (Tex. App.--Houston
[14th Dist.] 1999, pet. denied). "If the court can give a certain or definite legal
meaning or interpretation to the words of an instrument, it is unambiguous and the
court may construe it as a matter of law." Id. "If, however, the meaning of the
instrument is uncertain or reasonably susceptible to more than one meaning, it is
ambiguous." Id.

 The only reasonable interpretation of the devise in Shirley's will of all of her
property to Pickelner "to be distributed in accordance with the specific instructions
which I have provided him" is that Shirley intended for Pickelner to receive only
legal title to her property, i.e., to hold her property in some kind of trust, rather than
outright. See Heidenheimer, 84 Tex. at 184, 19 S.W. at 385 (indicating that following
language created semi-secret trust: "I give, devise and bequeath to my brother . . . in
trust, to be disposed of by him as I have heretofore or may hereafter direct him to
do"); see also Ray, 144 S.W.2d at 668 (indicating that following language created
semi-secret trust: "I have instructed the said W.E. Fowler [devisee, styled "trustee"
earlier in the will] how I desire my said estate to be handled and I leave the matter
entirely to his honesty and integrity"; also relying on language that delegated specific
powers over devised property); cf. Barrientos, 94 S.W.3d at 280 ("No particular form
of words is required to create a trust."). Shirley's will was unambiguous in this
regard, and we may thus construe the devise as a matter of law. See Hancock, 757
S.W.2d at 119; Wright, 2 S.W.3d at 671.

 We further hold that the trust that Shirley attempted to create in her will was
a semi-secret trust because it lacked essential terms, in particular because it
completely failed to identify the beneficiaries. See Heidenheimer, 84 Tex. at 184, 19
S.W. at 385; Brelsford, 564 S.W.2d at 406 (providing that express trust requires,
among other things, certainty in designating beneficiaries under trust). A semi-secret
trust is, in essence, a failed express testamentary trust. Because an express
testamentary trust was attempted, but failed, the trust terms could not be proved by
parol evidence. See, e.g., Heidenheimer, 84 Tex. at 182, 19 S.W. at 384 (in holding
that terms of semi-secret testamentary trust's terms could not be proved by parol
evidence, reasoning that "there are no parts of a testamentary paper more important
elements in its validity than those which name the beneficiaries and declare what part
of the testator's estate each shall receive. While language of the statute prescribing
the requisites to a will is affirmative, it as fully denies testamentary effect to parol
declarations as would it if it expressly declared that no testamentary disposition of
property should be made in manner other than that prescribed."); Brelsford, 564
S.W.2d at 406. Because the semi-secret trust could not be proved by parol evidence,
and because the will contained no residuary clause, Pickelner held all devised
property under the remedy of a resulting trust for the benefit of Shirley's heirs at law. (7) 
See Heidenheimer, 84 Tex. at 182-84, 19 S.W. at 384-85; see also Ray, 144 S.W.2d
at 669. That is, her heirs at law take under her will. 

 In contrast to our holdings above, the trial court concluded that Shirley's will
did not intend to establish any kind of testamentary trust--that is, that her will did not
contain a semi-secret trust. For the reasons discussed above, we disagree with the
trial court's interpretation that Shirley's will did not contain a semi-secret trust. 
Nonetheless, because no fact findings were requested or entered, we may affirm the
judgment on any legal theory supported by the evidence. See, e.g., Musick, 902
S.W.2d at 69. The trial court's ultimate determination that Shirley's heirs at law were
to receive all of her property upon her death was correct, and we uphold it.


Conclusion


 We affirm the judgment of the trial court.



 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.
1. In his issue one, Pickelner had argued that the trial court's April 2003
judgment was not final. That challenge has been rendered moot by this Court's
abatement of the appeal, its remand of the cause for entry of a final judgment,
and the trial court's rendition of a final judgment.
2. Pickelner's issue three states, "The trial court erred in overruling Pickelner's
'Motion for New Trial and in the Alternative, Motion to Modify Judgment to
Enforce Settlement Agreement' because Texas law favors enforcement of
partial settlements and this settlement complied in all fashions with Texas Rule
of Civil Procedure 11." However, the only argument in the combined
discussion of issues two and three is that the trial court erred in overruling the
motion without reaching its merits because the court had mistakenly
determined that that motion was untimely filed. Pickelner argued the merits
of enforcing the settlement agreement only in the context of harm, that is, only
to demonstrate that the summary denial of his motion based on the mistake
concerning its timeliness was harmful error. This is not the equivalent of a
challenge, like Hurwitz's, that the trial court erred because it failed to enforce
the settlement agreement. What is actually argued and briefed under an issue
controls over how the issue itself is phrased. See Miller v. State & County Mut.
Fire Ins. Co., 1 S.W.3d 709, 712 (Tex. App.--Fort Worth 1999, pet. denied)
(in considering brief that identified four issues presented, but that briefed only
two of those issues, declining to address two issues that were not discussed in
brief's argument section); see also Tex. R. App. P. 38.1(h) ("The brief must
contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record."). In any event, even if
Pickelner's third issue could be read to include a challenge that the trial court
erred by not enforcing the settlement agreement, we would overrule that
challenge for the reasons stated in the discussion of that issue in Hurwitz's
appeal.
3. See Tex. R. Civ. P. 11.
4. A variation of this constructive-trust scenario occurs when the devisee is a
fiduciary or confidant, the testator justifiably relies on a secret trust agreement,
and the devisee breaches the secret trust agreement by refusing to convey the
property after the testator's death: because the fiduciary's breach of secret-trust
agreement constitutes a breach of confidence, a constructive-trust remedy can
be imposed in favor of the intended beneficiary, even without a showing that
the devisee committed fraud in the agreement's inducement. See Mills v. Gray,
147 Tex. 33, 39, 210 S.W.2d 985, 988 (1948) ("'A constructive trust arises
where a conveyance is induced on the agreement of a fiduciary or confidant to
hold in trust for a reconveyance or other purpose, where the fiduciary or
confidential relationship is one upon which the grantor justifiably can and does
rely and where the agreement is breached, since the breach of the agreement
is an abuse of the confidence, and it is not necessary to establish such a trust
to show fraud or intent not to perform the agreement when it was made.'")
(quoting 54 Am. Jur. 178, § 233)); see also Rankin v. Naftalis, 557 S.W.2d
940, 944 (Tex. 1977); Leigh v. Weiner, 679 S.W.2d 46, 49 (Tex.
App.--Houston [14th Dist.] 1984, no writ).
5. After Shirley executed her will, the Probate Code was amended to provide that
"a devise or bequest of property in a will is void"--without qualification
concerning of the amount of the bequest--if made to "an attorney who
prepares or supervises the preparation of a will." Tex. Prob. Code Ann.
§ 58b(a)(1) (Vernon 2007). However, section 58b does not apply to wills, like
Shirley's, executed before its effective date. See Act of May 30, 1997, 75th
Leg., R.S., ch. 1054, § 2, 1997 Tex. Gen. Laws 4016, 4016.
6. See Tex. Disciplinary R. Prof'l Conduct 1.08(b) (2005), reprinted in Tex.
Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R.
art. X, § 9).
7. Hurwitz urges this Court to adopt the rule from the Restatement (Third) of
Trusts that, when the will contains a semi-secret trust, the intended
beneficiaries of the semi-secret trust, rather than the heirs, receive the intended
bequest under the remedy of a constructive trust. See Restatement (Third)
Trusts § 18(1) (2003) & cmt. c. We decline to adopt this rule--which,
incidentally, the same Restatement reveals is the minority rule in America, see
id. cmt. c, see also Gerry Beyer, 10 Texas Practice Series §§ 45.2, 45.3
(3rd ed.)--because it runs contrary to the rule followed in Texas for 115 years. 
See, e.g., Heidenheimer v. Bauman, 84 Tex. 182, 19 S.W. 382, 383-84 (1892).