Opinion issued June 27, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00133-CV

_____

### JAMES A. WEST, P.C., Appellant

### V.

### GEORGE A. PUGH, Appellee

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-80309**

---

### MEMORANDUM OPINION

Appellant James A. West, P.C. appeals the trial court's take-nothing judgment on a breach-of-contract claim against his former client, appellee George A. Pugh, after a bench trial. In five issues, West contends that because Pugh did

not plead the affirmative defense of prior material breach and the issue was not tried by consent, the trial court erred in finding that Pugh had cause to terminate the contract.

We affirm.

## Background

In December 2008, George Pugh was struck by a drunk driver as he left the St. Regis Hotel. Pugh suffered serious injuries and permanent impairment as a result of this accident. The driver, James Dugan, who had previously been convicted of intoxication manslaughter, had become intoxicated while attending holiday parties at the hotel that were sponsored by his employer, National Oilwell Varco (NOV). The car he was driving when he struck Pugh was leased to NOV.

At the time of the accident, Pugh was working for attorney James West in an administrative capacity. West, whose law practice centered on collections (not personal-injury lawsuits), offered to represent Pugh. In May 2009, they entered into a contingency-fee agreement. Approximately seven months later, West filed suit against Dugan for negligence and gross negligence and against the hotel for premises and dram-shop liability. Seven months later, NOV was added as a defendant, and four months after that Ace Parking Management, Inc., who ran the valet service at the hotel, was also added as a defendant.

2

On January 20, 2011, the trial court granted a motion for continuance filed by Ace Parking. The order set the case for trial on September 5, 2011 and stated, "No further continuances for incomplete discovery will be granted." In April 2011, West terminated Pugh's employment due to downsizing of the firm. Pugh testified that he was not upset by the termination, saying, "It was a reduction in force, and I understood."

In May 2011, Pugh settled with the hotel and Ace Parking.[*] The same month, West sent a demand letter to Jarrett E. Garner, the attorney representing Dugan and NOV, seeking to settle Pugh's claims for $875,000. But NOV did not respond to the settlement demand, and on June 30, 2011, West sent NOV "Plaintiff's First Requests for Production" and a request for disclosure. This was the first set of written discovery sent to NOV.

Although West settled Pugh's premises and dram-shop liability claims against the hotel and the parking facility, Pugh testified that he was unhappy with the level of communication and he believed that West was not devoting sufficient attention to his case or zealously representing his interests. Pugh testified that he had asked West why he delayed filing suit by approximately eight months after

---

[*] On May 17, 2011, Pugh signed a release settling his claims against the hotel for $50,000. On May 19, 2011, Pugh signed a release settling his claims against Ace Parking Management, Inc. for $17,000. Both releases stated, "I am completely satisfied with the above compromised settlement, with the services of the law firm and my attorney and with the amount of the fee charged and with the expenses listed above."

Pugh signed the contingency-fee agreement. Pugh said that West told him that he was "waiting for the criminal proceedings against Dugan." Pugh also said that he had concerns that West was not aggressively pursuing his case. At West's request, Pugh spoke to his treating physician about preparing a written narrative. Pugh testified that when he reported back that the narrative would cost $500, West decided not to pursue it. Again, Pugh became concerned about his lawsuit because "[i]t did not appear that he was willing to spend the time or spend the money to pursue my case." Pugh also testified that West spent only 30 minutes preparing him to be deposed by the defendants. He said that he was not informed about certain actions that West took, such as filing motions for continuance. He testified that West pressured him to accept the settlement offers from the hotel and parking facility, despite Pugh's request for more time to consider the offers.

In late June 2011, Pugh confronted West about his case:

> On June 24th, I had—previous to that date, Mr. West had gotten my deposition back from the other lawyers; and he had asked me to come get it, take home, read it, review it, see if I had any problems with it or whatever. I had taken it back to him on Friday, June 24th, and told him I had no problems with it; and we were sitting there simply discussing things . . . just very general terms about the case. He told me at that time that he had sent a demand for 850 to the opposing law firm. I had asked him, I said I thought we were going to request a million; and he said, well, he was going to settle for 850 because he didn't think they would negotiate on a million.
> I advised him that I probably was not going to come off that much. That wasn't giving us a whole lot of negotiation room, and I was not going to come off that number very much. At this point he

4

said, "Well, you've just wasted a month of my time. We might as well go to trial. You need to get the hell out of my office."

And I asked him, "I need to know this. Are you still in this? Are you still going to do this?"

He proceeds to stand up—and excuse me, You Honor—and tells me, "You need to get the F out of my office. I'm about to put a boot up your ass." I stood up and walked out of the office.

Approximately a week later, Pugh terminated West's representation in a letter that stated: "Based on your actions, behavior, and conduct you are fired for cause. Do not perform any more work or incur additional expenses relative to this case." At that time, West had represented Pugh for approximately 785 days. Pugh engaged new counsel, but West opposed their substitution on the basis that he was still entitled to his one-third contingency fee in any further recovery Pugh might obtain. In early August 2011, West communicated to Pugh that NOV had offered to settle his claims for $70,000.

Meanwhile, Pugh's new attorneys represented him for approximately two months, during which time they took three depositions, proved up medical and billing records, obtained a life care plan report, took a video deposition for trial substantiating $160,000 in future medical costs, and served a 32-page designation of expert witnesses. They also defended a motion for summary judgment and participated in mediation. As a result of these efforts, Pugh settled his claims with NOV for $375,000 several days before trial.

Just before the mediation, West intervened in the lawsuit, seeking to recover his contingency fee from any further recovery that Pugh would obtain. In response to the petition in intervention, Pugh filed an answer with a general denial and a counterclaim based on breach of contract and breach of fiduciary duty, seeking to recover the attorney's fees that West previously earned for the settlements with the hotel and the parking facility. At no time, however, did West file any special exceptions pertinent to Pugh's counterclaims.

The case on West's claims in intervention proceeded to trial before the court. At trial West testified about the contingency-fee contract and said that he would have completed all the necessary work before trial if Pugh had not discharged him. However he also testified to a number of actions that he had not yet taken at the time that Pugh discharged him. He testified that he had received copies of the hotel's "safe harbor certificates" pertinent to Pugh's dram-shop claims, and he said he spoke to two bartenders after filing suit. But he said he could not locate any of the employees who had worked the night of Pugh's accident to take depositions or determine what had actually happened. Though he said his strategy was to depose Dugan, the driver, before taking any other depositions, he conceded that he took no depositions at all before settling Pugh's claims with the hotel and Ace Parking. And he did not take Dugan's deposition until April 26, 2011, nearly a year and a half after filing suit. At the time Pugh settled with the hotel and parking facility,

6

West also had not scheduled depositions of any NOV employees. He said that he "was having a good relationship with the NOV lawyer" and that he intended to take seven or eight depositions beginning in July 2011, though he had not actually scheduled them. West testified that he was aware that an off-duty police officer had witnessed the accident, but he did not depose the officer because "[h]e wouldn't respond to any phone calls; he wouldn't respond to any letters. I didn't want to just subpoena him out of the blue until we needed to because that kind of makes police officers hostile." West designated Pugh's treating physician as the medical expert in this case, but he conceded that he never spoke to him directly. West said he could not reach the doctor by phone. Though West had not obtained affidavits proving-up Pugh's medical or billing records, he testified that he was waiting until Pugh had completed all of his medical therapies and procedures and he said that his intention was to depose the doctor and prove-up the medical records if they were unable to settle with Dugan and NOV. Finally, despite the court's order that no further continuances would be granted to complete discovery, West believed that NOV would file a motion for continuance and the court would grant it.

Nearly all of Pugh's testimony regarding his dissatisfaction with West's performance was admitted without objection. Only when Pugh was specifically asked why he dismissed West and sought other legal counsel did West object on

7

the grounds that prior material breach of contract is an affirmative defense that must be specifically pleaded under Texas Rule of Civil Procedure 94. West argued that because Pugh did not specifically plead that affirmative defense, he should be precluded from introducing any evidence pertaining to it:

> West: Your Honor, I'm going to object to any testimony as to why he did this [terminated West as his lawyer]. Under Rule 94, anything trying to void the matter would require an affirmative pleading. They've only given a general denial in this matter. Why would he breach a contract or terminate a contract certainly would be an affirmative pleading, a defense that—and absent a pleading, he is not allowed to assert it.
>
> The case law is clear. He can talk about the contract, but as to why he did it would have been an affirmative defense as to why the plaintiff should not be awarded. And good case law says: Such defenses as opposed to a general denial of the proposition to which a defendant may assert to defeat in a prima facie case made by the plaintiff—and he has not pled. All he has pled is a general denial. So he should not be able to present any affirmative defense as to why he believes he should be able to terminate the contract.

In response, Pugh argued that his answer to the question was relevant to his breach of contract and breach of fiduciary duty counterclaims, that the question of the affirmative defense of prior material breach had been tried by consent throughout the trial, and that West had the burden of proof to show that "he did not do anything which caused the termination." The trial court overruled West's objection. Pugh then explained, consistent with his prior testimony elicited

8

without objection, that he was frustrated with the lack of communication from West and he believed that West was not zealously or aggressively representing him.

In addition, Pugh's trial attorney testified without objection about the state of the case file when he substituted for West. Pugh's attorney testified that he believed certain discovery responses were inadequate and would have resulted in exclusion of testimony favorable to Pugh at trial. He testified that his review of the case file showed no indication that West had communicated with Pugh's treating physicians or that he had interviewed the bartenders. Trial counsel also testified that he would have filed the civil suit immediately rather than waiting for the criminal proceedings to end. He explained that a defendant facing both civil and criminal liability for his actions might assert his Fifth Amendment rights in response to videotaped deposition questions, and such a response could be favorable to Pugh's claims.

On cross-examination, West asked Pugh's attorney about his substitution as attorney of record. Pugh's attorney recalled that West had asked them to "protect" his interest in his contingency fee and that they declined to do that because it would have conflicted with their duties to Pugh. West then offered into evidence an email from Pugh's lawyer, which stated, "Mr. Pugh's position is that you were discharged for cause and thus not entitled to recovery of any fee."

Pugh also offered testimony from an expert on legal ethics, who testified generally about a lawyer's duty of diligence and the meaning of "neglect." The expert testified that he had heard all of the evidence presented in the case and it was his opinion that Pugh had cause to terminate West as his attorney based on the following justifications:

> neglect, conscious disregard or inattentiveness involving a conscious disregard for the responsibilities that James West, P.C. owed to Mr. Pugh in this representation over an extended period of time; and . . . the lack of communication that Mr. Pugh has testified to, the lack of not only keeping him informed proactively but also being responsive to his questions about the status and progress of the matter.

West did not object to this testimony at trial on the grounds that Pugh had failed to plead the affirmative defense of prior material breach.

After the trial, the trial court sua sponte issued findings of fact and conclusions of law. On appeal, West alleges that the following findings of fact are not supported by admissible evidence:

35. James A. West P.C. was not diligent in prosecuting Mr. Pugh's case.
36. James A. West P.C. did not fulfill its obligation to respond to reasonable inquiries from Mr. Pugh.
37. James A. West P.C. did not keep Mr. Pugh reasonably informed regarding significant events in the lawsuit.
38. James A. West P.C. did not adequately explain important matters in a manner so that Mr. Pugh could understand them.
39. Mr. Pugh had good cause to terminate his contingent-fee agreement.
40. Mr. Pugh terminated the contingent-fee agreement for cause.
41. James A. West P.C. failed to comply with its obligations under the contingent-fee contract.

42. James A. West P.C.'s failure to comply with its obligations was material.

. . . .

46. Mr. Pugh did not breach the contingent-fee contract.

West also challenges the following conclusions of law:

1. George Pugh had cause to terminate the contingent-fee contract for representation with James A. West P.C. because the law firm committed material breaches of the contract.
2. Because Mr. Pugh had cause for terminating the law firm, the contractual claim for 1/3 fee of the recovery is unenforceable and no further fee is owed to James A. West P.C. or Mr. West beyond the fee already collected from the settlement with Starwood Hotels and Resorts and Ace Valet Parking.
3. Alternatively and only in the event that Mr. Pugh is found to have materially breached the contingent-fee contract, his breach is excused by the prior material breach of James A. West, P.C.
4. James A. West P.C. should take nothing on its claim against Mr. Pugh.

The trial court rendered judgment that West take nothing on his claim against Pugh and that Pugh take nothing on his counterclaims against West. West appealed.

**Analysis**

West argues that because Pugh failed to plead prior material breach as an affirmative defense, the trial court should not have considered any of the evidence of West's prior material breach of the contingent-fee contract. West's arguments fail because Pugh specifically pleaded breach of contract and breach of fiduciary duty in response to West's petition in intervention and because evidence and

11

testimony pertaining to West's prior material breach was admitted without objection at trial.

"Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000); *Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 748 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When no special exceptions have been sustained, we construe pleadings liberally in favor of the pleading party. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897; *Commerce & Indus. Ins. Co.*, 339 S.W.3d at 748.

Rule 94 of the Texas Rules of Civil Procedure requires a party to expressly plead those affirmative defenses listed in the rule "and any other matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. Prior material breach of contract is an affirmative defense to a breach of contract claim. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Thus, a party asserting that he should not be held liable for breach of contract because the opposing party's prior material breach excused his performance must plead and prove the elements of prior material breach. *See Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied). If an affirmative defense is not pleaded or tried by consent, it is waived. *See RE/MAX of*

12

*Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327–28 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

In response to West's petition in intervention, Pugh purported to plead counterclaims for breach of contract and breach of fiduciary duty. Pugh's responsive pleading, "Plaintiff's Original Answer and Counter-Claim," stated:

> TO THE HONORABLE JUDGE OF SAID COURT:
>
> COMES NOW, George A. Pugh, Plaintiff, in the above numbered and entitled cause, and files this his Original Answer to Petition in Intervention.
>
> I.      General Denial
> Plaintiff enters a general[] denial [of] the allegations contained in Petition in Intervention and demands strict proof thereof.
>
> II.      Counter-Claim
> George Pugh hereby asserts a counterclaim. Mr. Pugh seeks recovery of the one-third fee collected by Mr. West in the Ace Parking and St. Regis Hotel settlements. The basis for the claim is Mr. West's breach of contract, breach of fiduciary duty and violation of rules governing the conduct of attorneys in Texas.
>
> WHEREAS, PREMISES CONSIDERED, George A. Pugh prays that Intervenor be required to prove his allegation according to law and that any of all relief prayed and sought by Intervenor be denied. Plaintiff takes nothing by reason of this suit, and for all such other and further relief, both general and special, at law and in equity to which the Intervenor may show himself justly entitled.

West did not specially except to this pleading, and thus we construe it liberally in favor of Pugh. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897; *Commerce & Indus. Ins. Co.*, 339 S.W.3d at 748. First, by pleading for recovery

13

of the fee West collected for settling claims before he was discharged as Pugh's attorney, Pugh necessarily alleged a prior material breach. S*ee McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 275 (Tex. App.—Dallas 2006, no pet.) ("A petition is sufficient if a cause of action or defense may be reasonably inferred from what is specifically stated."). Second, although Pugh stated that he "seeks recovery of the one-third fee," his prayer for relief did not seek to recover any specified amount. Rather, his general prayer asked for denial of all relief sought by "Intervenor" and requested that "Plaintiff take nothing by reason of this suit." Construing this in Pugh's favor, we conclude that Pugh's answer gave fair notice of his intent to raise the affirmative defense of prior material breach. *See My-Tech, Inc. v. Univ. of N. Tex. Health Sci. Ctr.*, 166 S.W.3d 880, 884 (Tex. App.—Dallas 2005, pet. denied) (stating that in absence of prayer for affirmative relief, pleading is an affirmative defense not a counterclaim); *see also McGraw*, 195 S.W.3d at 275 (holding that pleading gave fair notice of affirmative defense of implied warranty of suitability because basis for defense included landlord's failure to repair latent defects in leased premises).

Moreover, a party may obtain a judgment on an unpleaded claim when it is tried by consent. TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). "Trial by consent is

14

intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the [unpleaded] issue." *RE/MAX of Tex.*, 961 S.W.2d at 328. To determine whether an unpleaded issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *See Pickelner v. Adler*, 229 S.W.3d 516, 523 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). A determination of trial by consent is applied with care and never in a doubtful situation. *Id.* A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

When Pugh was asked on direct examination why he dismissed West and sought other legal counsel, West objected, arguing that Pugh's failure to plead the affirmative defense of prior material breach should foreclose this testimony. The trial court overruled the objection. However, Pugh's testimony that he was unhappy with the communication, and that he felt that West was not adequately representing his interests, was consistent with his prior testimony already admitted without objection. More notably, West himself elicited testimony from Pugh's counsel and introduced into evidence an email that showed that Pugh had dismissed West for cause and therefore believed he was not entitled to recover any

15

additional fee. No objection was raised to the testimony of Pugh's expert on legal ethics, who opined that West was not diligent and had neglected his duty in this case. In fact, West thoroughly cross-examined the expert about diligence, neglect, and cause for termination. Finally, West discussed Pugh's reasons for dismissing him in his closing statement. West said, "George Pugh testified that the reason he terminated the contract was because he lost confidence that James A. West, P.C. was serving his best interest." Likewise, Pugh's attorney focused on the prior breach in his closing statement as well, saying, "This case is about whether or not George Pugh had cause to terminate the contract." West did not object to Pugh's closing based on any pleading defect.

Although some of the testimony regarding the course of litigation was relevant to West's breach of contract claim, other evidence admitted without objection was relevant only to the affirmative defense of prior material breach, such as expert testimony that Pugh had cause to dismiss West and the email stating Pugh's position that West was discharged for cause. The parties' closing arguments also focused on whether Pugh had cause to discharge West as his attorney. Considering the record as a whole it is apparent that both West and Pugh understood the issue of prior material breach was in the case and that this issue was actually tried. *See Pickelner*, 229 S.W.3d at 523.

We hold that Pugh's pleading, liberally construed, raised the affirmative defense of prior material breach, and, in the alternative, we hold that the issue was tried by consent. Although West states that "[t]here is no admissible evidence in the record to justify the Court's Findings of Fact Numbers 35-46 . . . or Court's Conclusions of Law Numbers 1, 2, 3, & 4," he makes no sufficiency of the evidence argument in his brief. Rather, all of his issues on appeal depend on his argument about the alleged defect in Pugh's pleading. In light of our holding, we overrule all of West's appellate issues.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.