

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-445-CV

IN RE ESTATE OF
CONARD L. FLORENCE, DECEASED

------------

### FROM PROBATE COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

## I.  Introduction

In two issues, Appellant Jarrell B. Ormand appeals the denial of his motion for summary judgment and the granting of Appellees Mary Gene Ness, Carroll Edward Florence, III, and Joseph S. Florence's[1] cross-motion for summary judgment.  We affirm and remand for further proceedings.[2]

------------

[1] From this point on, we refer to Appellees as Mary, Edward, and Joseph in their individual capacities and as "the Heirs" in their collective capacity.

[2] This is an interlocutory appeal of a summary judgment and cross-summary judgment in a probate case.  *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006); *Crowson v. Wakeham*, 897 S.W.2d 779, 781 (Tex. 1995).

## II.  Factual and Procedural History

The genesis of this appeal is the construction of the language of a will and the treatment of certain estate property by the decedent's widow.

**Conard's Will:**

On July 28, 1981, Conard Florence executed a will ("Conard's Will").  He died almost a year later, survived by his wife Eleanor Bankhead Florence.  On August 16, 1982, Conard's Will was admitted to probate.  Pursuant to the will, the probate court appointed Eleanor as executor of Conard's estate.

Article II of Conard's Will bequeathed to Eleanor all of his interests in the couple's residence, club memberships, insurance policies, all other "tangible property,"[3] and a pecuniary gift.  Article III provided in pertinent part:

> I give, devise and bequeath all of the rest, residue and remainder of my Estate, real, personal and mixed, of whatever kind and character and wheresoever situated, including the balance of my separate property and my interest in the community estate of my wife, Eleanor Bankhead Florence, and myself, to Eleanor Bankhead Florence, Trustee, in Trust for the uses and purposes on the terms and conditions hereinafter set forth:
>
> . . . .
>
> Upon the death of my wife, the remaining corpus and income shall be distributed to or for the benefit of such person or persons, in such amounts and proportions and upon such terms, trusts, conditions and limitations as my said wife shall appoint by a Will, which Will specifically refers to the power herein given her; provided, however, that my wife shall have no power to appoint the corpus of this Trust or

---

[3] It is the term "tangible property" that is the subject of this appeal.

any part thereof to herself or her estate, or to her creditors, or to the creditors of her estate. . . .

Conard's Will also directed that income from the testamentary trust ("Trust") be paid to Eleanor during her lifetime. Finally, Conard's Will provided that, upon Eleanor's death, if she had not exercised her special power of appointment over the Trust assets, the remaining Trust corpus and income would be divided into three shares of equal value, one for each of Conard's then-living niece and nephews—Mary, Edward, and Joseph.

**Eleanor's Will:**

On May 26, 2004, Eleanor died and her will ("Eleanor's Will"), executed June 8, 2001, was admitted to probate. Eleanor's Will designated her nephew Ormand as independent executor of her estate and it left her estate to Ormand and to Conard's niece and nephews—Mary, Edward, and Joseph. Eleanor did not exercise her power to appoint other persons to receive the corpus of the Trust.

**Conard's Estate and Trust:**

Upon Eleanor's death, the probate court appointed Joseph to be the successor independent executor of Conard's open estate and the Heirs to be successor co-trustees of the Trust.

In August 2004, Ormand, acting as executor of Eleanor's Will, met with the Heirs to discuss Conard's estate. During the meeting, Ormand suggested that the term "tangible property" in Article II of Conard's Will included personal and real

3

property. The Heirs, on the other hand, asserted that Conard intended for "tangible property" to mean "tangible personal property," thereby excluding real property.[4]

**The Heirs' Declaratory Action:**

Ultimately, the Heirs filed two lawsuits against Ormand, one related to Conard's estate wherein they sought declaratory relief regarding the meaning and intent of certain provisions in Conard's Will and the other related to Eleanor's estate wherein they alleged that Eleanor breached her fiduciary duties and committed negligence and gross negligence. The two lawsuits were later consolidated and merged into one suit.

After consolidation, the Heirs filed an amended, consolidated petition seeking a declaratory judgment regarding the interpretation of the term "tangible property" as used in Article II of Conard's Will. Apart from the aforementioned pleadings and motions asking the probate court to interpret and declare the meaning of the term "tangible property," subsequent motions were filed questioning whether the statute of limitations barred the parties from asserting their respective positions regarding the meaning of "tangible property."

---

[4] The import of the parties' positions is that if "tangible property" includes realty as opined by Ormand, then that realty was inherited by Eleanor and upon her death was then inherited by the Heirs and Ormand. On the other hand, if "tangible property" does not include realty as opined by the Heirs, then that realty was placed into the Trust and upon Eleanor's death, it would pass to the Heirs, excluding Ormand.

4

**Ormand's Motion for Summary Judgment:**

On September 4, 2008, Ormand filed a motion for summary judgment on the ground that the four-year limitations period on the Heirs' will construction claim began to run when Conard's Will was admitted to probate in 1982. Ormand argued that, because the Heirs fell under the category of "interested persons" in Conard's estate, they were deemed to have constructive knowledge of the contents of Conard's Will and therefore should have raised their challenges within four years after Conard's Will was admitted for probate—that is, some time before August 16, 1986.

**The Heirs' Response and Cross-Motion for Summary Judgment:**

In their response, the Heirs asserted that a will beneficiary's declaratory action does not begin to accrue until the executor does some "overt act" showing that he is not going to abide by the will's terms as construed by the beneficiary.

The Heirs filed a cross-motion for summary judgment on two grounds. First, the Heirs asked for a no evidence summary judgment on the ground that Ormand cited no summary judgment evidence of any overt act occurring more than four years prior to their filing a declaratory action that would have notified them "that anyone, let alone [Ormand] or Eleanor, construed Conard's [W]ill differently than [the Heirs] do now." Second, the Heirs asked for a traditional summary judgment on the ground that Ormand was barred from asserting an interpretation of Conard's Will different

from what Eleanor had employed in dealing with Conard's estate and Trust over the twenty-one-year time period between Conard's death and her own death.

The Heirs attached to their motion Eleanor's 1983 estate tax return, in which Eleanor claimed that at least $472,693 in assets from Conard's estate had passed into the Trust.[5] They also attached a letter that Eleanor had written to her lawyer acknowledging that the Trust should be funded and asking her lawyer to take the steps necessary to complete that process. Their motion alleged that:

> . . . as Executrix and Trustee, Eleanor (1) maintained a checking account in the Estate's name; (2) executed oil, gas, and mineral leases regarding the properties at issue in the name of the Estate and [] Trust; (3) executed division orders regarding the properties at issue in the name of the Estate and [] Trust; (4) directed oil, gas and mineral production companies to distribute royalties, which were generated from Conard's family legacy real property, to the Estate and [] Trust; (5) deposited those royalties in the Estate checking account; and (6) used the Estate checking account to pay for, among other expenses, the taxes incurred by the [] Trust on the royalties generated from Conard's family legacy real property.[6]

Following a hearing on these motions, the probate court denied Ormand's motion for summary judgment on statute of limitations and granted the Heirs' cross-motion for summary judgment. This appeal followed.

---

[5] The Heirs asserted that the only possible explanation for $472,693 in assets passing into the Trust was that a portion of Conard's real property had passed into the Trust.

[6] In support of these contentions, the Heirs attached bank account statements; tax statements; tax receipts; and oil, gas, and mineral lease and division orders.

6

### III. Statute of Limitations

In two issues, Ormand argues that the trial court erred by denying his motion for summary judgment and by granting the Heirs' cross-motion for summary judgment. Although both parties agree that a four-year statute of limitations applies in this case, they do not agree on when that limitations period began to run, or when it accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 2008) (proscribing a residual limitations period of four years).

### A. Standard of Review

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

#### 1. Traditional Summary Judgment

A movant is entitled to summary judgment on an affirmative defense if the movant conclusively proves all the elements of the affirmative defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's

favor. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

### 2. No-Evidence Summary Judgment

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

### B. Ormand's Motion for Summary Judgment

In his first issue, Ormand argues that the trial court erred by denying his motion for summary judgment. Ormand contends that the Heirs, as interested persons, are charged with notice of the contents of the probate records, including Conard's Will. *See* Tex. Prob. Code Ann. § 3 (Vernon Supp. 2009); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). Thus, Ormand asserts that because the term "tangible property" has consistently been interpreted to include both real and personal property,[7] the Heirs had four years from the date of Conard's Will being

---

[7] *See Wheeler v. Box*, 671 S.W.2d 75, 78 (Tex. App.—Dallas 1984, no writ) (finding that tangible property is commonly understood to be property that is capable

8

admitted for probate in which to bring their declaratory action claiming that Conard intended for the term "tangible property" to mean something different from its accepted legal meaning. We disagree.

The Uniform Declaratory Judgments Act ("UDJA") is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights . . . and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002 (Vernon 2008); *accord Cobb v. Harrington*, 144 Tex. 360, 367, 190 S.W.2d 709, 713 (1945); *Puretex Lemon Juice, Inc. v. Cal. Prods., Inc.*, 324 S.W.2d 449, 453 (Tex. Civ. App—San Antonio 1959), *aff'd*, 160 Tex. 586, 334 S.W.2d 780 (1960). The UDJA provides that "[a] person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 2008). Heirs at law and devisees under a will are interested persons with standing to contest a will and they may do so in a declaratory judgment action. *See* Tex. Prob. Code Ann. § 3(r); *Foster v. Foster*, 884 S.W.2d 497, 501 (Tex. App.—Dallas 1993, no writ); *see also Hartman v. Solbrig*, 12 S.W.3d 587, 594 n.7 (Tex. App.—San Antonio 2000, pet. denied); *Harkins v. Crews*, 907 S.W.2d 51, 55 (Tex. App.—San Antonio 1995, writ denied).

---

of being handled or touched and includes both real and personal property); *Cont'l Homes Co. v. Hilltown Prop. Owners Ass'n, Inc.*, 529 S.W.2d 293, 296 (Tex. Civ. App.—Fort Worth 1975, no writ) (stating that tangible property includes both real and personal property); *Erwin v. Steele*, 228 S.W.2d 882, 885 (Tex. Civ. App.—Dallas 1950, writ ref'd n.r.e.) (construing a will).

9

Although we agree with Ormand that the Heirs were interested persons who had standing to bring a declaratory judgment action at the time Conard's Will was admitted to probate, we do not agree with Ormand's contention that their claim arose and began to accrue at that time. The only evidence presented showed that over the twenty plus years between Conard's death and Eleanor's death, Eleanor treated the term "tangible property" as if it meant "tangible personal property." And it was not until Ormand became the executor of Eleanor's estate and asserted a different interpretation that a conflict arose between the Heirs and Eleanor—or rather, Eleanor's estate. Thus, we agree with the Heirs that the facts of this appeal are analogous to the facts in *Murphy v. Honeycutt*, 199 S.W.2d 298, 299 (Tex. Civ. App.—Texarkana 1946, writ ref'd), and in *Hornbeck v. Moran*, No. 05-96-1127-CV, 1998 WL 315624, at *1 (Tex. App.—Dallas June 17, 1998, pet. denied) (not designated for publication).

In *Murphy*, the heirs filed a declaratory judgment action thirteen years after the decedent's will had been admitted to probate, arguing that the sale of certain property by the decedent's widow was void because she only had a life estate in the property, making them the true owners of the property. 199 S.W.2d at 298. The purchaser of the property, however, argued that the heirs' claims were barred by the four-year statute of limitations. *Id.* The trial court and the court of appeals sided with the heirs, holding that their claim had not begun to accrue until the widow deeded

10

the property to the purchaser, thereby demonstrating that she was not going to abide by the heirs' construction of the will. *Id*. at 299.

Likewise, in *Hornbeck*, the decedent's children filed a declaratory judgment action against the decedent's step-children fifteen years after the decedent's will had been admitted to probate. 1998 WL 315624 at *1. The children asserted that the decedent's wife had received only a life estate and not a fee simple interest in certain property and that they were the remaindermen of that property. *Id*. The decedent's wife, however, had left the property in question to the step-children, and the step-children argued that limitations barred the declaratory action. *Id*. The trial court and the court of appeals sided with the children, holding that the claim was not barred by limitations because the accrual date occurred when the step-children refused to acknowledge the remaindermen's interest in the estate based on the remaindermen's interpretation of the decedent's will. *Id*. at *4.

Ormand argues that *Murphy* and *Hornbeck* are both distinguishable because the plaintiffs' causes of action in both cases arose out of an attempt to enforce the plain language of the will, while the Heirs' cause of action arises out of an attempt to rewrite the plain language of the will. Ormand's argument, however, is based on the assumption that "tangible property" does not and cannot mean "tangible personal property" as the Heirs assert. To support his argument, Ormand isolates the term "tangible property" in Conard's Will and asks this court to apply the generally accepted meaning—that is, that tangible property means personal and real property.

11

However, the proper standard in construing a will is to focus on the testator's intent. *See San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). The testator's intent is ascertained by looking at the language found within the four corners of the will. *Id*. If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testator's intent. *See Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 372 (Tex. App.—Fort Worth 2003, pet. denied).

Ormand's argument leads us down a path that requires us to address the merits of the case. Because this is not an appeal on the merits but rather on limitations, we decline to go down that road. We hold that, as a matter of law, the Heirs' declaratory judgment action did not begin to accrue until Ormand asserted his interpretation of "tangible property," thereby demonstrating that he was not going to abide by the Heirs' construction of Conard's Will. *See Murphy,* 199 S.W.2d at 299; *Hornbeck*, 1998 WL 315624, at *4. We further hold that the trial court did not err by denying Ormand's motion for summary judgment on statute of limitations. Accordingly, we overrule Ormand's first issue.

## C. The Heirs' Cross-Motion for Summary Judgment

In his second issue, Ormand contends that the trial court erred by granting the Heirs' cross-motion for summary judgment because (1) the Heirs' proposed accrual test is incorrect and, therefore, the Heirs' no-evidence argument fails and (2)

12

Ormand's limitations defense is not "in substance" a declaratory action that is barred by limitations.

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellees' summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

In the first part of the Heirs' cross-motion for summary judgment, they asserted that the trial court should strike Ormand's limitations defense because there is no evidence of any overt act occurring more than four years prior to their filing a declaratory action. Because we addressed this argument under Ormand's first issue, and concluded that "overt act" is the proper accrual test and that it was not until Ormand became the executor of Eleanor's estate and asserted a different interpretation that a conflict arose between the Heirs and Eleanor—or rather, Eleanor's estate, we need not address it again. *See* Tex. R. App. P. 47.1. We hold, therefore, that the trial court did not err by granting the Heirs' cross-motion for summary judgment. Accordingly, we overrule this portion of Ormand's second issue, which is dispositive, and do not reach the remaining portion of Ormand's second issue.

13

## IV.  Conclusion

Having overruled Ormand's first issue, we affirm the portion of the trial court's October 22, 2008 order denying Ormand's motion for summary judgment—thus, the Heirs' tangible personal property claims are not barred by the statute of limitations. Having overruled the dispositive portion of Ormand's second issue, we affirm the portion of the trial court's October 22, 2008 order granting the Heirs' cross-motion for summary judgment.  We remand this case to the trial court for further proceedings.


BOB MCCOY
JUSTICE


PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

DELIVERED: March 11, 2010