**Betty Francis LACIS, Appellant,**

v.

**John Karl LACIS, Jr., Jason Wesley Lacis, Miranda Lynn Slate, and Carissa Mueck Ferguson, Appellees.**

No. 01–10–00118–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 2011.

Rehearing Overruled Aug. 10, 2011.

Jerry B. Dozier, Jerry B. Dozier, P.C., Alvin, TX, for Appellant.

Mark Aronowitz, Law Office of Mark Aronowitz, Texas City, TX, for Appellees.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

This appeal arises from a declaratory judgment action concerning a dispute over

the Last Will and Testament of the late Uldis Lacis. In one issue, Uldis's wife, appellant, Betty Francis Lacis, challenges the trial court's judgment declaring that specific bequests made in Uldis's will to his two children did not lapse upon the children's deaths but passed to his grandchildren, appellees, John Karl Lacis, Jr., Jason Wesley Lacis, Miranda Lynn Slate, and Carissa Mueck Ferguson, pursuant to Texas Probate Code section 68, commonly known as the Anti–Lapse Statute. *See* TEX. PROB.CODE ANN. § 68 (Vernon 2003). The dispositive issue that we must determine is whether Uldis's will provides that the Anti–Lapse Statute does not apply to the specific bequests at issue. Because we conclude that the will so indicates, we reverse and remand.

## Background

Uldis Lacis signed his Last Will and Testament ("the Will") on November 16, 1993. The Will reflects that Uldis was married to Betty Francis Lacis and that he had two children from a previous marriage: a son, John K. Lacis, and a daughter, Diane B. Lacis Mueck. The Will further reflects that Uldis had four grandchildren: Jason Lacis, John K. Lacis, Jr., Miranda Slate, and Carissa Mueck. The Will names Betty, Uldis's children, his grandchildren, and his mother, Marta Lacis, as beneficiaries of Uldis's estate. Uldis appointed Betty as the independent executrix of his will and estate and named two alternate independent executors should Betty be unwilling or unable to serve.

Uldis died testate on November 27, 2007 at the age of 76. He was predeceased by his mother, Marta Lacis, his son, John K. Lacis, and his daughter, Diane B. Lacis Mueck. He was survived by his wife, Betty, and his four grandchildren.

After the Will was admitted to probate, a dispute arose between Betty and Uldis's grandchildren regarding certain provisions of the Will. The relevant provisions of the Will include the following:

## ARTICLE III

## SPECIFIC BEQUEST—TANGIBLE PERSONAL PROPERTY

I make the following specific bequests:

3.1 I give to my son, JOHN K. LACIS, any pickup truck or car that I use as my personal vehicle.

3.2 I give to my wife any family car or cars that we use generally for family purposes.

3.3 I give to JOHN K. LACIS all of my tools except for the equipment or tools used for household and gardening. JOHN K. LACIS may utilize my workshop, but may not reside in my home or workshop while such is the residence of my wife and/or my mother, MARTA A. LACIS, without their express permission.

3.4 I give the remainder of my tangible personal property to my family to be distributed among my family members as agreed by my wife, BETTY F. LACIS, and mother, MARTA A. LACIS.

. . . .

## ARTICLE V

## SPECIFIC DEVISE REAL PROPERTY

5.1 I hereby specifically devise a life estate to my wife and my mother in the property that I use as my principal residence, located at 1918 Kings Lane, Alvin, Brazoria County, Texas ("the real property"). Both my wife and my mother shall reside in and use the home and real property as life tenants until the death of the survivor of them. Upon the death of the survivor of my wife and my mother, the real property shall be dis-

tributed in accordance with paragraph 5.2 below.

5.2 Upon the death of my wife and my mother, the home and real property described in paragraph 5.1 herein shall be distributed to my son, JOHN K. LACIS, and my daughter, DIANE B. LACIS MUECK, in the percentages of ownership as set forth below:

(a) I give to my son, JOHN K. LACIS, seventy percent (70%) ownership of the real property.

(b) I give to my daughter, DIANE B. LACIS MUECK, thirty percent (30%) ownership of the real property.

Should my son and daughter decide to sell the real property, each shall receive the same percentage of sale proceeds as is reflected by their respective percentage of ownership.

## ARTICLE VI
## RESIDUARY ESTATE

6.1 Residuary Estate—Wife Surviving: Subject to the definition of Residuary Estate in paragraph 9.3 herein, if my wife survives me, I give to her all the rest and residue of my property (residuary estate) to be hers absolutely and in fee simple.

. . . .

## ARTICLE IX
## DEFINITIONS

9.3 Residuary Estate: Except as stated herein, the term "residuary estate" means all property in which I may have any interest (including lapsed gifts) which is not disposed of other than by Article VI entitled "Residuary Estate". . . ."

The dispute between Betty and Uldis's grandchildren, appellees herein, centered on the disposition of the specific gifts that Uldis made to his son and daughter in Articles III and V of the Will. Uldis's grandchildren pointed out that pursuant to the Anti–Lapse Statute, a devise or bequest made to a descendant of the testator does not lapse when the beneficiary predeceases the testator but instead passes to the surviving descendants of the devisee or legatee.[1] On this basis, the grandchildren asserted that they were entitled, respectively, to the gifts made in the Will to their deceased parent.

In contrast, Betty asserted that the gifts made to Uldis's son and daughter in Articles III and V had lapsed when his children predeceased Uldis. She asserted that the lapsed gifts had fallen into the residuary estate pursuant to Paragraphs 6.1 and 9.3 of the Will. Specifically, Betty pointed to the language of Paragraph 9.3 indicating that the residuary estate at the time of Uldis's death was comprised of all property in which he "may have any interest (*including lapsed gifts*). . . ." (Emphasis added.) She intimated that this language indicated Uldis's intention that any legacy or devise that had lapsed became a part of the residuary estate. She argued that this language precluded the application of the Anti–Lapse statute to the gifts given Uldis's children in Articles III and V. Because she is the sole beneficiary of the residuary estate, Betty asserted that she is entitled to the lapsed gifts granted to Uldis's children in those articles.

Betty filed a petition for declaratory judgment seeking a determination by the trial court regarding who was entitled to the property at issue. Betty maintained that the specific bequests and devises to Uldis's children found in Articles III and V of the Will had lapsed and passed to her pursuant to the residuary clause found in Article VI of the Will.

1. *See* TEX. PROB.CODE ANN. § 68(a) (Vernon 2003).

The trial court conducted a trial on the petition for declaratory judgment. At trial, the grandchildren's attorney informed the court that the parties had "agreed on the facts" and characterized the dispute as a "will construction case."

After the trial, the trial court signed a judgment in favor of the grandchildren. In the judgment, the trial court declared that "the specific bequests in Articles III and V of the last will and testament of [Testator] Uldis Lacis ... made to deceased beneficiaries, John Karl Lacis and Diane Beth Lacis Mueck, did not lapse, and as required under the provisions of Texas Probate Code Section 68(a) those specific bequests pass to the lineal descendents of the deceased beneficiaries named above, as substitute takers under the Testator's will." The judgment further provides that "John Karl Lacis, Jr., Jason Lacis, and Miranda Slate, as lineal descendants of the deceased beneficiary, John Karl Lacis, are entitled, under Paragraph 3.1 of the last will and testament of the decedent, to share equally in any pickup truck or car that the Testator used as his personal vehicle." The judgment also states, "John Karl Lacis, Jr., Jason Lacis, and Miranda Slate, as lineal descendants of the deceased beneficiary, John Karl Lacis, are entitled, under Paragraph 3.3 of the last will and testament of the decedent, to share equally in any tools except for the equipment or tools used for household and gardening." Lastly, the judgment provides that the three children of Uldis's son, Karl, as his lineal descendant, would share equally in 70 percent ownership of the real property identified in Paragraph 5.2(a) of the Will and that the child of Uldis's daughter, Diane, is entitled to 30 percent ownership of the real property pursuant to Paragraph 5.2(a) of the Will.

In support of its judgment, the trial court filed findings of fact and conclusions of law. In the filing, the trial court indicated that the case had been tried based on an agreed statement of facts pursuant to Texas Rule of Civil Procedure 263. In one "finding," the trial court stated, "The parties consented to this Court entering judgment in this case on an agreed statement of facts."

Among the conclusions of law supporting the trial court's judgment were the following:

3. A testamentary gift for an individual beneficiary who either predeceased a testator, or who is deemed to have predeceased the testator due to § 47 of the Probate Code, is said to have "lapsed."

4. Further, unless the will provides differently, the subject property of lapsed specific, general or demonstrative gifts may pass under the residuary clause of a testator's will, if any, or if the lapsed gift is the residuary gift itself (or if there is no residuary clause), the lapsed gift may pass by intestate succession to the testator's heirs at law.

5. A testamentary gift, however, will not lapse if the deceased devisee is a descendant of the testator or a descendant of a testator's parent and died before (or is deemed to have died before) the testator.

6. The descendants of the devisee who survived the testator by 120 hours take the devised property in place of the devisee. This law is known as the Anti–Lapse Statute.

7. The Anti–Lapse Statute applies unless there is clear language in a will that provides otherwise. For example, a devise or bequest "to my surviving children" or "to such of my children as shall survive me" would prevent the application of the anti-lapse statute because of the survivorship condition.

8. In the instant case, the applicability of the Anti–Lapse Statute allows the

specific devises made to the Testator's deceased children to pass through to *their* children because the devisees are descendants of Testator.

9. The personal property described in Paragraph 3.1 and 3.3 of the Will, to wit: the 2000 Ford pickup truck and tools pass to the lineal descendants of the predeceased beneficiary, to wit: the three surviving children of John Karl Lacis, Sr., as joint tenants in common in the following proportions—(a) John Karl Lacis, Jr., 33.33%; (b) Jason Wesley Lacis, 33.33%; and (c) Miranda Lynn Slate, 33.34%.

10. The real property described in Paragraph 5.1 of the Will, to wit: the property located at 1918 Kings Lane, Alvin, Texas, passes to the lineal descendents of the predeceased beneficiaries, to wit: the four surviving children of John Karl Lacis, Sr., and Diane Beth Lacis Mueck as joint tenants in common in the following proportions—(a) John Karl Lacis, Jr., 23.33%; (b) Jason Wesley Lacis, 23.33%: (c) Miranda Lynn Slate, 23.34%; and (d) Carissa Mueck Ferguson, 30%.

Betty now appeals the trial court's declaratory judgment presenting one issue.[2] Betty contends that because the specific gifts to Uldis's children found in Articles III and V of the Will had lapsed, the gifts "pass according to the residuary clause of the Will" and not according to the Anti–Lapse Statute. She asserts that, as a result, those gifts pass to her as the residuary beneficiary under the Will.

### Standard of Review

 When, as in this case, the record indicates that the trial court heard the case on stipulated facts, a reviewing court may treat the case as one involving an agreed statement of facts under Rule of Civil Procedure 263. *See Abbott v. Blue Cross & Blue Shield of Tex., Inc.,* 113 S.W.3d 753, 757 (Tex.App.-Austin 2003, pet. denied); *State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied); *see also* TEX.R. CIV. P. 263. "An agreed statement of facts under Rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law." *Kessler,* 932 S.W.2d at 735 (Tex.App.-Fort Worth 1996, writ denied) (citing *Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 634 (Tex. App.-Houston [1st Dist.] 1993, writ denied)). We make no presumptions in favor of the judgment because the trial court had no factual issues to resolve. *Harris County Appraisal Dist. v. Tex. Gas Transmission Corp.,* 105 S.W.3d 88, 91 (Tex. App.-Houston [1st Dist.] 2003, pet. denied); *Stewart v. Hardie,* 978 S.W.2d 203, 206 (Tex.App.-Fort Worth 1998, pet. denied). We decide only whether the trial court correctly applied the law to the agreed facts. *Tex. Gas Transmission Corp.,* 105 S.W.3d at 91; *Harris County Appraisal Dist. v. Transamerica Container Leasing Inc.,* 920 S.W.2d 678, 680 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Because the issue is purely a question of law, our review is de novo. *Tex. Gas Transmission Corp.,* 105 S.W.3d at 91; *Stewart v. Hardie,* 978 S.W.2d 203, 206 (Tex.App.-Fort Worth 1998, pet. denied).

### Applicability of Probate Code Section 68(a)

As stated by the grandchildren (hereinafter "appellees") in their brief, "The key legal issue in this case is whether the respective specific bequests and devises

---

2. In her "Issues Presented" section of her brief, Betty identifies a second issue for review. Because her brief presents no argument or authority to support it, the second identified issue is waived. *See* TEX.R.APP. P. 38.1(i).

'lapsed,' or whether they passed through to the deceased beneficiary's lineal descendants" pursuant to the Anti–Lapse Statute. The parties agree that Uldis's intent, as expressed in the Will, determines this issue.

## A. Governing Law and Principles

At common law, when a bequest or devise was made to someone who predeceased the testator, the gift lapsed, unless the will provided for a substitute legatee or devisee. *See Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 890 (1948). A lapsed gift will pass into the residuary estate unless a specific intent to the contrary is shown. *See Wilson v. Clay,* 593 S.W.2d 725, 727 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ refused n.r.e.); *see* TEX. PROB.CODE ANN. § 68(b).

The Anti–Lapse Statute provides an important exception to the common-law rule of lapse. Subsection (a) of the statute prevents the lapse of a gift made to a descendant of the testator, or to a descendant of the testator's parents, when the beneficiary predeceases the testator. *See* TEX. PROB.CODE ANN. § 68(a). By its terms, the Anti–Lapse Statute "applies unless the testator's last will and testament provides otherwise." *See id.* at § 68(e). The statute explains, "For example, a devise or bequest in the testator's will such as 'to my surviving children' or 'to such of my children as shall survive me' prevents the application of subsection (a) of this section." *Id.* In other words, the Anti–Lapse Statute applies unless the testator expressed a contrary testamentary intent or purpose in his will. *See id.; see also Rossi v. Rossi,* 448 S.W.2d 162, 165 (Tex. Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) (adopting view that Anti–Lapse Statute "is without application if it is evident from a will that the failure to provide for the passing of a legacy in

conformity with the statute is not an oversight and the statutory disposition would not be in harmony with the testator's testamentary purpose").

The proper standard in construing a will is to focus on the testator's intent. *See San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex.2000). The testator's intent is ascertained by looking at the language found within the four corners of the will. *Id.* In other words, we look for the testator's intent as revealed in the language of the whole will. *Welch v. Straach,* 531 S.W.2d 319, 321 (Tex.1975); *Cooley v. Williams,* 31 S.W.3d 810, 812 (Tex.App.-Houston [1st Dist.] 2000, no pet.) The question is not what the testator intended to write, but the meaning of the words he actually used. *Lang,* 35 S.W.3d at 639. "If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testator's intent." *In re Estate of Florence,* 307 S.W.3d 887, 893 (Tex.App.-Fort Worth 2010, no pet.). We presume that the testator placed nothing superfluous or meaningless in his will and that he intended every word to play a part in the disposition of his property. *Cooley,* 31 S.W.3d at 812 (citing *Marlin v. Kelly,* 678 S.W.2d 582, 587 (Tex.App.-Houston [14th Dist.] 1984), *aff'd,* 714 S.W.2d 303 (Tex.1986)).

## B. Analysis

In Paragraph 9.3, Uldis specifically stated that the residuary estate would include "all property in which I may have any interest (including lapsed gifts)...." If a word has been ascribed a technical legal meaning, we presume that the word is being employed in that sense when it appears in a will, unless a different meaning can be gleaned from the will as a whole. *See Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951). We also

assume that when technical, legal terms are used in a will, they are being used correctly. *See id.*

The term "lapsed" has a well-settled legal meaning in the context of wills and estates. A legacy or devise has historically been defined to have "lapsed" when the legatee or devisee predeceases the testator, and a substitute beneficiary has not been named. *See Chadwick,* 208 S.W.2d at 890; *Bomar v. Carstairs,* 124 Tex. 492, 79 S.W.2d 841, 846 (1935). We presume that Uldis ascribed that legal meaning to the term "lapsed" in defining the property he intended to include in his residuary estate. *See Mitchell,* 244 S.W.2d at 806.

We are aware of arguments that support the position that the reference to lapsed gifts does not manifest an intention to avoid subsection (a) of the Anti–Lapse Statute. It could be asserted that "lapsed gifts" means any gifts not saved by the Anti–Lapse Statute, thereby ensuring that any gifts that had lapsed would not pass by intestacy. It could also be argued that the Anti–Lapse Statute prevents the "lapse" of the gifts in the first instance, thus rendering the Will's residuary clause inapplicable to appellees.

Accepting either argument, however, renders the lapsed-gift language surplusage, which is contrary to the established rules of will construction. *See Cooley,* 31 S.W.3d at 812. The common law and subsection (b) of the Anti–Lapse Statute already provide that a lapsed gift passes into the residue of the estate. *See* TEX. PROB.CODE ANN. § 68(b); *Wilson,* 593 S.W.2d at 727. Thus, it is unnecessary for a will to contain a similar provision to prevent intestacy.

In their brief, appellees criticize Betty's argument that another provision in the Will, which is not directly involved in the dispute, also indicates Uldis's intent that subsection (a) of Anti–Lapse Statute does not apply to the specific bequests and devises in the Will that are the subject of this dispute. Betty points to Article IV of the Will in which Uldis gave a certain percentage of two different bank accounts to his mother, to his son, and to his daughter "or to [his or] her issue per stirpes." Betty argued that these express provisions showed that Uldis had intended that only certain specific gifts granted in the Will would pass to the devisee's lineal descendants. She asserted that the lack of such wording with regard to the specific gifts in Articles III and V indicate Uldis's intent that those gifts would not pass to the devisee's descendants in the event of the devisee's death. In other words, she asserted that the lack of such wording indicated a testamentary intent contrary to the application of the Anti–Lapse Statute.

We agree with appellees that, standing alone, Betty's argument would not sufficiently show Uldis's intent that subsection (a) of the Anti–Lapse Statute does not apply to the specific bequests made in Articles III and V. Nonetheless, Article VI demonstrates an understanding by Uldis of how to make a substitute gift when a beneficiary did not survive. Uldis's apparent decision not to mention a substitute class if his children predeceased him, when he had demonstrated an understanding of how to make such a substitute class gift, lends further support to the conclusion that by defining the residuary estate to include lapsed gifts, Uldis intended that subsection (a) of the Anti–Lapse Statute would not apply to the specific bequests in Articles III and V. In other words, although Article VI is not determinative, it is of assistance in ascertaining Uldis's intent with respect to the specific bequests made in Articles III and V when read together with the residuary clause language of the Will. *See Bergin v. Bergin,* 159 Tex. 83, 315 S.W.2d 943, 946–47 (1958)

(explaining that court must ascertain intent of testator by examining the entire will as a whole).

Appellees also contend that Betty's construction of the Will is contrary to the holdings of *Perry v. Hinshaw*, 633 S.W.2d 503, 505 (Tex.1982) and *White v. Moore*, 760 S.W.2d 242, 243–44 (Tex.1988). Citing these cases, appellees assert that Betty's "argument fails because in order for the language of the will to negate the application of the Anti–Lapse Statute, the limiting language must be specific to the bequest or devise at issue." Each of these opinions stand for the proposition that a will must contain sufficiently clear language to defeat a lineal descendant's right to recover a specific bequest when the named devisee predeceases the testator. *See White*, 760 S.W.2d at 243–44; *Perry*, 633 S.W.2d at 505. However, contrary to appellees' assertion, neither necessarily precludes a testator from placing language in a residuary clause obviating the application of the Anti–Lapse Statute nor requires that the limiting language must be contained within the specific bequest at issue.[3] *See White*, 760 S.W.2d at 243–44; *Perry*, 633 S.W.2d at 505.

The parties have not cited nor have we found any Texas case deciding whether language in a will's residuary clause, which provides that the residue is to include lapsed gifts, is sufficient to negate the application of the Anti–Lapse Statute provision that saves the gift for the descendants of the deceased devisee. Our research reveals that the majority of other jurisdictions addressing this issue have held that a testator's use of similar language demonstrates an intention that a lapsed bequest becomes part of the residuary estate and is not saved by the applicable anti-lapse statute. *See, e.g., Colombo v. Stevenson*, 150 N.C.App. 163, 563 S.E.2d 591, 592–94 (2002) (concluding that language that residue included "all lapsed legacies and devises, or other gifts made by this will which fail for any reason" was sufficiently clear language to express testatrix's intent that North Carolina's anti-lapse statute did not apply to legacies and devises which had lapsed); *Estate of Salisbury*, 76 Cal.App.3d 635, 143 Cal.Rptr. 81, 82–84 (1978) (concluding that language stating that "the residue of my estate, real and personal, wheresoever situate, including all failed and lapsed gifts" was a sufficiently clear expression of testatrix's intent to render that California's anti-lapse statute inapplicable); *In re Neydorff*, 193 A.D. 531, 184 N.Y.S. 551, 554 (N.Y.App.Div. 1920) (holding that in case in which testator granted the residue to specified person, "including lapsed legacies," the legacies to testator's predeceased brother and sister did not fall within New York's anti-lapse statute); *In re Phelps' Estate*, 147 Iowa 323, 126 N.W. 328, 329–30 (Iowa 1910) (concluding residuary clause providing, "I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated together with any of my estate that may fail, for any reason to pass ... to the following named persons ...." demonstrated testator's intention that Iowa's anti-lapse statute was not applicable).

The only exception is Kentucky. In *Blevins v. Moran*, 12 S.W.3d 698, 700, 704 (Ky.Ct.App.2000) the Kentucky Court of Appeals held that a will's residuary clause that included the phrase "[a]ll the rest, residue and remainder of my estate ...

---

**3.** We note that the example contained in subsection (e) of the Anti–Lapse Statute for negating the application of the statute is an illustration of limiting language that would be contained within a specific devise or bequest. *See* TEX. PROB.CODE ANN. § 68(e). However, nothing in the Anti–Lapse Statute requires as much.

including legacies and devises, if any, which may fail for any reason" did not, by itself, establish a testator's intent to avoid operation of Kentucky's anti-lapse statute. The *Blevins* Court reached its holding after concluding that the language used by the testator was ambiguous, determining that the Kentucky anti-lapse statute carried with it a "strong presumption against lapse," and recognizing that Kentucky law required an affirmative statement in a will that the anti-lapse statute did not apply. *Id.* at 703; *Cf. Rossi,* 448 S.W.2d at 165 (indicating that testamentary intent that Anti–Lapse Statute not apply can be express or implied).

Here, Uldis granted specific legacies and devises to his two children in Articles III and V without stating what would occur should they predecease him. Later in the will, in Paragraph 9.3, Uldis stated that his residuary estate was to include "all property in which I may have any interest (including lapsed gifts) . . . ." Given the commonly assigned legal meaning to the term "lapsed," the inclusion of this language indicates that Uldis contemplated that the specific gifts granted in Articles III and V could lapse. The language demonstrates Uldis's intention that should they lapse, the gifts would become part of his residuary estate. Application of the Anti–Lapse Statute would require us to ignore how Uldis expressly defined his residuary estate and presume that he intended for the specific bequests in Articles III and V to pass to his grandchildren should his children predecease him. In light of the express language in Uldis's will, we decline to do so. *See Florence,* 307 S.W.3d at 893 (explaining that testator's intent is ascertained by looking at language found within the four corners of the will, and that, if possible, all parts of a will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testator's intent).

Considering the language of Paragraph 9.3 and the Will as a whole, we conclude that Uldis sufficiently expressed his intent that subsection (a) of the Anti–Lapse Statute not apply. We hold that the trial court erred when it determined that subsection (a) of the Anti–Lapse Statute applied and ordered that appellees were entitled to the specific gifts granted to their respective parent in Articles III and V of the Will.

### Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings.