Opinion issued February 6, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00216-CV

_____

## IN RE ESTATE OF DEBRA E. HUNT, DECEASED

## TRACY MITCHELL AND ANDREA VASQUEZ, Appellants

## V.

## ARABIA VARGAS, INDEPENDENT EXECUTOR OF THE ESTATE OF DEBRA E. HUNT, DECEASED, Appellee

---

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Case No. PR-0077954**

---

# O P I N I O N

Tracy Mitchell and Andrea Vasquez appeal from a summary judgment in which the probate court interpreted Debra E. Hunt's will as giving a large share of her personal property to her life partner, Arabia Vargas. We affirm.

# BACKGROUND

This suit arises out of a dispute over Debra E. Hunt's will. In her will, Hunt disposed of her property as follows:

Section 1.    I hereby make the following specific bequests:

1.  I give all of my family photos, furnishings and mementos inherited from our grandparents or our parents to Tracy Eileen Mitchell;
2.  I give all of my remaining household and personal property to Arabia Vargas.

Section 2.    I hereby give all of the remainder of the property, wherever located, which I may own at the time of my death as follows[:] Fifty percent (50%) to Tracy Eileen Mitchell and her issue, per stirpes and not per capita; and Fifty percent (50%) to Lina Schmidt Hollis and Andrea Wendy Vasquez, and each of their issue, per stirpes and not per capita.

Hunt had two life partners during her life. The first was Connie Moore, who passed away almost two years before Hunt. Andrea Wendy Vasquez and Lina Schmidt Hollis are Moore's daughter and stepdaughter. Hunt had no children of her own. Tracy Eileen Mitchell is Hunt's sister. Arabia Vargas was Hunt's life partner when Hunt passed.

The total value of Hunt's estate exceeded $665,000. It included:

- just under $230,000 in various bank accounts;

- more than $24,000 in household furnishings and miscellaneous belongings;

- two motor vehicles worth $34,000 combined;

- almost $3,500 in stocks; and

2

- a house in Galveston County valued at $374,000.

The house was sold a month or so after Hunt passed away.

The parties' dispute centers on the scope of Hunt's bequest to Vargas. Vargas contends that Hunt bequeathed to her all personal property—including intangible personal property such as the bank accounts—other than the family photos, furnishings, and mementos that Hunt gave to Mitchell. Vargas therefore maintains that the sole property that passes under the residuary clause is Hunt's house. Mitchell and Vasquez, in contrast, contend that Hunt's bequest of personal property to Vargas is limited to household items and tangible personal property. They maintain that intangible personal property, including the money in Hunt's bank accounts, and real property are subject to the will's residuary clause.

Both sides moved for summary judgment in the probate court. The probate court sided with Vargas and declared that Hunt had bequeathed all personal property to Vargas other than the specific items bequeathed to Mitchell.

## JURISDICTION

The probate court's summary judgment was a partial one. It resolved the parties' dispute as to the interpretation of the will, but it did not resolve their corresponding claims for attorney's fees, which the probate court severed into a separate action with its own cause number. Mitchell and Vasquez then appealed.

This court notified the parties of its intent to dismiss the appeal for lack of jurisdiction because the summary judgment was not final and appealable due to the pendency of the fee claims. *See, e.g.*, *Van Duren v. Chife*, 569 S.W.3d 176, 184 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (summary judgment disposing of some but not all claims between parties to appeal does not become final and appealable by severing unresolved claims from those resolved by summary judgment).

In response, Mitchell and Vasquez filed an agreed motion to abate the appeal so that the parties could dismiss their unresolved fee claims. We granted the motion, and the parties non-suited their fee claims. We then reinstated the appeal from the summary judgment, which is now final and appealable.

## DISCUSSION

Mitchell and Vasquez contend that when Hunt's will is interpreted as a whole, it unambiguously bequeaths Vargas tangible personal property rather than all personal property other than the family-related items given to Mitchell. Thus, they assert, Hunt's bank accounts pass to them and Hollis under the will's residuary clause. Vargas responds that Hunt unambiguously bequeathed to her all personal property, including the bank accounts, other than the items given to Mitchell.

### *Standard of Review and Applicable Law*

The interpretation of an unambiguous will—one that can be given a definite meaning—presents a question of law, which we review de novo. *Brewer v. Fountain*,

4

583 S.W.3d 871, 876 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The testator's intent, as expressed in the will's terms, is controlling. *See id.* We therefore must scrutinize the words used by the testator rather than trying to intuit what she may have intended to write. *See id.* We must interpret the will as a whole, neither adding nor subtracting from its terms. *See id.*; *Lacis v. Lacis*, 355 S.W.3d 727, 733 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd w.o.j.). We cannot rely on extrinsic evidence of intent to reinterpret an unambiguous will's terms. *Jinkins v. Jinkins*, 522 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Similarly, when a will is unambiguous, we must enforce its terms as written and cannot reinterpret them based on interpretive aids or canons of construction. *Pickelner v. Adler*, 229 S.W.3d 516, 531 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

In ascertaining the meaning of the words used by the testator, we generally give them their plain, ordinary meaning unless the will shows that the testator used them in another sense. *See Barker v. Rosenthal*, 875 S.W.2d 779, 781 (Tex. App.—Houston [1st Dist.] 1994, no writ). When, however, the law confers a technical legal meaning on a word, we ordinarily presume the testator intended this usage unless the will indicates otherwise. *Lacis*, 355 S.W.3d at 733; *see also Martin v. Palmer*, 1 S.W.3d 875, 878 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (courts must give legal terms defined and approved by judicial decision their established meaning

unless context shows contrary usage). We also assume that when a technical legal term is used in a will, it is being used correctly. *Lacis*, 355 S.W.3d at 734.

In a will, an unqualified reference to "property" encompasses everything of exchangeable value that the testator owned, including real and personal property whether tangible or intangible. *In re Estate of Setser*, No. 01-15-00855-CV, 2017 WL 444452, at *3 (Tex. App.—Houston [1st Dist.] Feb. 2, 2017, no pet.) (mem. op.). In its ordinary usage, the term "property" is comprehensive. *Id.* "Personal property," in contrast, excludes real property but otherwise remains broad in definition, including everything other than real property that is subject to ownership. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000); *see* TEX. EST. CODE §§ 22.028, 22.030 (defining personal and real property). Because "personal property" has a settled legal meaning, a court ordinarily need not look beyond these words to ascertain a testator's intent if she uses them. *See Lang*, 35 S.W.3d at 640 (construing "real property"). The legal definition of "personal property" is so well established that it generally does not allow for an interpretation other than the one ascribed to it by the law. *See id.* at 641 (holding so with respect to term "real property"); *see also Erwin v. Steele*, 228 S.W.2d 882, 886 (Tex. App.—Dallas 1950, writ ref'd n.r.e.) (bequest of "personal property" includes "every form of personal property from whatever source it may be derived; that is, everything except real property").

*Analysis*

We must decide whether Hunt's bequest to Vargas of "all my remaining household and personal property" conveys all of Hunt's personal property other than the family-related items she gave to Mitchell in the immediately preceding clause of the will or conveys a more limited subset of Hunt's personal property to Vargas. As we explain below, we hold that this bequest unambiguously conveys all Hunt's personal property—tangible and intangible—apart from the items given to Mitchell.

"Personal property" has a well-established technical legal meaning. *See Lang*, 35 S.W.3d at 640. It encompasses everything other than real property. *Id.* Because the definition of "personal property" is settled, this definition controls unless context demands a contrary interpretation. *See id.*; *see also Lacis*, 355 S.W.3d at 733.

Mitchell and Vasquez contend that Hunt's will shows that she solely intended to convey tangible, not intangible, personal property to Vargas. They argue that:

(1) by referring to "household and personal property," Hunt limited "personal property" to items that are material and physical like household goods;

(2) reading the bequest to Vargas in light of the one to Mitchell, which exclusively conveyed household items, shows that Hunt solely intended to convey household goods to Vargas;

(3) by making the bequest to Vargas a specific one, Hunt necessarily limited it to particular, identifiable items, not an entire category of property;

(4) the scope of the residuary clause, which encompasses "the remainder of the property" without qualification, shows that Hunt intended to convey both personal and real property, which would be impossible if the specific bequest to Vargas conveys all of Hunt's personal property;

7

(5) the will requires payment of debts from the residuary estate, which shows that Hunt could not have intended for only real property to pass under the residuary clause as real property would need to be liquidated; and

(6) the declarations section refers to "real, personal, and mixed" property, which shows that Hunt did not use terms in a technical sense as Texas does not recognize mixed property as a category of property.

We address each of these arguments in turn.

*"Household" Does Not Restrict the Scope of "Personal Property"*

We reject Mitchell and Vasquez's argument that Hunt's combined bequest of household and personal property limits the latter category to tangible items. Hunt bequeathed "all of my remaining household and personal property" to Vargas. Mitchell and Vasquez's proposed interpretation disregards Hunt's use of the word "all," which is incompatible with the limited conveyance of a subset of her personal property. We must give effect to all the words Hunt used in her will. *See Brewer*, 583 S.W.3d at 876. A bequest of all personal property unambiguously includes both tangible and intangible property. *See Lang*, 35 S.W.3d at 640.

Mitchell and Vasquez contend that interpreting "personal property" in such an expansive way makes Hunt's bequest of her "remaining household" property superfluous. If Hunt had intended "personal property" to convey both tangible and intangible items, they argue, "there would have been no need to put household property in addition to personal property in the language of the bequest." We are unpersuaded by this argument because the language would remain superfluous if we

8

adopted Mitchell and Vasquez's interpretation. If Hunt bequeathed all her "remaining household and tangible personal property," as Mitchell and Vasquez advocate, her bequest of her "remaining household" property would still be subsumed and rendered superfluous by the more expansive "tangible personal property." A proposed interpretation of a written instrument that would merely exchange one ostensible superfluity for another does not shed any light on the drafter's intent.

Viewed in context, however, we do not think that an expansive interpretation of "personal property" actually renders "my remaining household" superfluous. Hunt's reference to her "remaining household" property is a segue between her first specific bequest, which exclusively conveyed household items, and her second one:

1. I give all of my family photos, furnishings and mementos inherited from our grandparents or our parents to Tracy Eileen Mitchell;
2. I give all of my remaining household and personal property to Arabia Vargas.

The "remaining household" language reinforces that, but for the particular household items that Hunt bequeathed to Mitchell, all others belong to Vargas. In other words, "my remaining household" refers back to the previous bequest rather than qualifying the "personal property" subsequently bequeathed to Vargas.

Mitchell and Vasquez rely on several decisions for the proposition that a specific term like "household" necessarily limits a more general one like "personal" when they are used together. In this case, we disagree. The principle that Mitchell

9

and Vasquez invoke is known by the name *ejusdem generis*, which means "of the same kind or class." *Ejusdem Generis*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under this canon of construction, "if words of a specific meaning are followed by general words, the general words are interpreted to mean only the class or category framed by the specific words." *Hussong v. Schwan's Sales Enters.*, 896 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1995, no writ). We do not, however, resort to canons of construction like *ejusdem generis* absent an ambiguity. *See id.* When a will is unambiguous, we must apply it as written. *See Pickelner*, 229 S.W.3d at 531.

Even if *ejusdem generis* applied, the decisions on which Mitchell and Vasquez rely are distinguishable. In *Erwin*, for example, the Dallas court of appeals addressed whether a bequest of "other personal belongings" was restricted in scope by the testator's identification of "two diamond rings" and "family pictures" as examples. 228 S.W.2d at 884. A divided court applied the canon and held that the bequest of "other personal belongings" was limited to the same species of property as the more specific items listed. *See id.* at 885–86. But *Erwin* differs from the present suit in two key respects. First, the bequest at issue used a term other than "personal property." Second, the bequest qualified the term that it did use—"personal belongings"—with two very specific examples: rings and pictures. Hunt's bequest of "all of my remaining household and personal property" is not analogous.

10

*First Bequest Does Not Limit the Second Bequest to Household Goods*

We reject Mitchell and Vasquez's argument that Hunt's bequests to Mitchell and Vargas must be construed as "one overall specific bequest" conveying tangible household goods alone. They argue that the bequest to Mitchell limits the scope of the bequest to Vargas because the former exclusively conveys household items and the two bequests are joined by a semi-colon instead of being separated by a period. But this ignores both the structure and language of the bequests. While Hunt's specific bequests are not separated by a period, they are separately numbered and the text of each is set off from the other rather than being formatted as a single sentence. Hunt gives Mitchell three particular types of items of specified provenance—"family photos, furnishings and mementos" inherited from their parents or grandparents—in her first bequest. She then gives Vargas "all of my remaining household and personal property" in her second bequest. An interpretation that restricts the second bequest to household goods alone would give no effect to its additional conveyance of "personal property," which encompasses more than household goods even when limited to tangible personal property.

*The Nomenclature of the Bequest is not Dispositive*

Contrary to Mitchell and Vasquez's position, Hunt's designation of her bequest to Vargas as a specific one does not show that Hunt intended to limit the bequest to tangible items. They reason that because a specific bequest customarily

11

conveys a particular thing, a specific bequest cannot convey all personal property. We agree that a specific bequest generally gifts a particular item that is distinguishable from all of the testator's other property. *See Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex. 1987). But on its face, Hunt's bequest to Vargas of "all of my remaining household and personal property" is not a specific bequest even though it is labeled as one. This remains equally true under Mitchell and Vasquez's proposed interpretation limiting the bequest to Vargas to all Hunt's tangible personal property. Because the substance of the bequest to Vargas does not correspond to its label, the label sheds no light on Hunt's intent as to the bequest's scope.

*Residuary Clause's Gift of the Remainder of Hunt's Property is Irrelevant*

Nor do we agree with Mitchell and Vasquez's contention that the expansive scope of the residuary clause shows that Hunt intended to limit her bequest to Vargas to tangible personal property. They contend that Hunt's use of the word "remainder" with the unqualified and all-encompassing term "property" in the residuary clause shows that she intended both personal and real property to pass under this clause. But if the bequest to Vargas is interpreted as disposing of all Hunt's personal property, they reason, then none would remain subject to the residuary clause.

Mitchell and Vasquez misapprehend a residuary clause's purpose. The primary purpose of a residuary clause is to prevent partial intestacy. *Dudley v. Jake & Nina Kamin Found.*, No. 01-12-00579-CV, 2014 WL 298270, at *3 (Tex. App.—

12

Houston [1st Dist.] Jan. 28, 2014, no pet.) (mem. op.). Partial intestacy could have arisen, for example, had a named beneficiary, like Vargas, died before Hunt. Residuary clauses exist in significant part to avoid such a result. *See* TEX. EST. CODE § 255.152(a). That a residuary clause like Hunt's is broad enough to dispose of both personal and real property does not, therefore, mean it actually must dispose of both to realize her intent. *See Hurt*, 744 S.W.2d at 5 (observing that "most residuary clauses deal with personal and real property" but that residuary clause at issue solely disposed of former despite broad applicability to "rest and residue" of estate).

*Debt Payment From Residuary Estate Doesn't Require a Different Interpretation*

Under Hunt's will, the executor is to pay any debts, expenses, and taxes from Hunt's residuary estate as soon after her death "as can be conveniently done without the unnecessary sacrifice of any of the properties" of the estate. Mitchell and Vasquez assert that this debt-payment provision shows that Hunt could not have intended to give all of her personal property to Vargas. They argue that:

- if Hunt's bequest to Vargas disposes of all personal property not already given to Mitchell, then Hunt's real property—her Galveston County house—is the sole property subject to the will's residuary clause; and

- if Hunt's real property is the sole property subject to the residuary clause, it will thwart Hunt's directive to pay debts soon and without sacrificing property because these payments will require the sale of the house.

Mitchell and Vasquez thus conclude that Hunt had to have intended that intangible personal property, like her bank accounts, pass under the will's residuary clause.

We disagree. Hunt's will does not require the executor to pay the estate's debts as soon as possible; it requires the executor to pay them as soon as can be conveniently done without unnecessary sacrifice. Nor is "sacrifice" synonymous with the mere "sale" of property. "Sacrifice" connotes the sale of property for less than its value. *See Van Brunt v. BancTexas Quorum*, 804 S.W.2d 117, 121 (Tex. App.—Dallas 1989, no writ) (discussing statute requiring notice of sale to debtor "so that property will not be sacrificed by a sale at less than its true value"). Thus, the sale of real property to pay estate debts is not inconsistent with Hunt's will.

*Reference to Mixed Property is Immaterial*

In a section of her will separate from her bequests and residuary clause, Hunt declares that she intends to dispose of all her "property of every kind, real, personal, and mixed." Mitchell and Vasquez contend that because Texas does not recognize mixed property as a separate category, Hunt's use of this term shows that she did not intend "personal property" to bear its technical legal meaning.

In the probate context, "mixed property" is property that is neither real nor personal. *Erwin*, 228 S.W.2d at 885. Texas, however, does not recognize "mixed property" either as an intermediate category of property or as a combination of real and personal property; in this state, property is real or personal. *See id.*; Tex. Est. Code §§ 22.028, 22.030 (defining "personal property" and "real property" and omitting "mixed property"). But formulaic references to real, personal, and mixed

property are not uncommon in Texas wills. *See, e.g.*, *In re Estate of Nash*, 220 S.W.3d 914, 916 (Tex. 2007) (bequest of "real, personal and mixed" property); *Doggett v. Robinson*, 345 S.W.3d 94, 97 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (bequest of "all my property, real, personal and mixed"); *Pickelner*, 229 S.W.3d at 520 (bequest of property "whether real, personal, or mixed"). At least one formbook recommends this formulation. *See* 12 TEX. FORMS LEGAL & BUS. §§ 24.207, 24.363 (recommending phrases "all my property, real, personal, and mixed" and "all of the property, real, personal, or mixed, which I may own" to declare intent to dispose of all property and bequeath all property respectively). We thus conclude that Hunt's use of this common formula does not show that she intended "personal property" to bear a meaning other than the one that it ordinarily has under Texas law.

*Conclusion*

Hunt's bequest of "all of my remaining household and personal property" is unambiguous—it conveys to Vargas all of Hunt's personal property other than the family-related items that she gave to Mitchell. Contrary to Mitchell and Vasquez's contentions, the other provisions of Hunt's will do not show a different intent.

### *Mitchell and Vasquez's Fallback Position*

Mitchell and Vasquez alternatively argue that Hunt's bequest to Vargas is ambiguous—that Hunt could have intended to bequeath all her personal property or

just her tangible personal property to Vargas—and that the probate court therefore erred in deciding that the will is unambiguous and interpreting it as a matter of law.

A will is ambiguous if it is susceptible to more than one reasonable interpretation or its meaning is simply uncertain. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam). Whether a will is ambiguous is a question of law. *Id.* If a will is not ambiguous, then courts must interpret it as a matter of law. *Id.*

Mitchell and Vasquez do not advance any arguments in support of ambiguity apart from the ones we already have discussed. Because Hunt's will is neither susceptible to more than one reasonable interpretation nor uncertain, we reject Mitchell and Vasquez's alternative position that Hunt's will is ambiguous.

## CONCLUSION

We affirm the probate court's judgment.


Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.